[Cite as *State v. Carswell*, 2021-Ohio-3379.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                           Court of Appeals No. S-20-001

      Appellee                                      Trial Court No. 19CR70

v.

Andrew R. Carswell                               **DECISION AND JUDGMENT**

      Appellant                                     Decided:  September 24, 2021

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Hotz, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**OSOWIK, J.**

### Facts & Procedural Background

{¶ 1} Appellant, Andrew Carswell, was indicted by the Sandusky County Grand

Jury on January 18, 2019, with one count of rape, a violation of R.C. 2907.02(A)(1)(b), a

felony of the first degree; two counts of gross sexual imposition, a violation of R.C.

2907.05(B), a felony of the third degree; and one count of importuning, a violation of R.C. 2907.07(A)(2), a felony of the third degree.[1] The charges stemmed from allegations that appellant touched the genitals of a seven year-old girl, L.Y., on two separate occasions.

{¶ 2} The matter proceeded to trial on December 9, 2019. The state called witnesses: L.Y., R.Y., A.R., Deputy Bill Darling, Deputy Matthew Ray, Amanda McCall, A.Y., Angela Wheeler, Lindsey Nelsen-Rausch, and Detective Sergeant Kenneth S. Arp.

{¶ 3} During the trial, L.Y. testified that appellant is married to her cousin and occasionally stays at their house during the holidays. L.Y. stated that the first incident occurred in October of 2018, when her mother left her alone for approximately 30 minutes with appellant to help her younger sister, R.Y., get ready for the Little Mermaid play. L.Y. agreed to allow appellant to massage her because her mother would sometimes rub her back. L.Y. went down to the basement where appellant stayed and began watching a movie on the air mattress. At this time, L.Y. testified that appellant began massaging her vagina and "tried to go in where I peed, but he couldn't fit his finger in there." The massaging ended when it was time to go to her sister's play.

{¶ 4} The second incident occurred approximately one month later on the evening of Thanksgiving, November 22, 2018. L.Y. testified that she was watching the movie "Elf" with appellant on the air mattress in the basement when he asked her to change into

---

[1] The rape charge in the indictment was brought under R.C. 2907.02(A)(1)(b), *not* R.C. 2907.02(A), so the charge did not include a "compel by force" element.

2.

a nightgown so he could give her a massage. Appellant was laying behind L.Y. on the air mattress with his stomach on her back and started massaging her shoulders, feet, then began touching her vagina. L.Y. testified that this time was different because his finger went into her vagina and it hurt. Additionally, appellant was breathing heavy, sweating, licking his finger, and touching his penis, then L.Y.'s vagina with one hand, while his other hand held his underwear down exposing his genitals. Appellant asked L.Y. to "kiss his penis" and L.Y. responded "no." The massaging ended when L.Y. asked to get a snack. Appellant followed L.Y. to the kitchen and spoke with other family members. L.Y. testified that while appellant was talking to relatives, she went upstairs into her sister's room and quickly told her what had happened. L.Y. indicates she was scared because she "pinky promised not to tell" and appellant said he would "put knives and guns in my Christmas presents if I told." After brief discussion, the sisters decided to go to their cousin's room, A.R.

{¶ 5} R.Y. testified during the trial that L.Y. had come into her room "freaking out." L.Y was talking very fast, rocking back and forth, and very anxious when she told her that "Andrew touched me and it hurt."

{¶ 6} A.R. testified that she had been sleeping when the girls rushed in her room and told her something bad had happened. L.Y. was crying when she told A.R., and she had to calm her down. Approximately 30 minutes later, L.Y.'s mother was searching for the girls and A.R. hushed her by pulling her into the room where L.Y. was sobbing.

3.

{¶ 7} A.Y. testified that appellant went Black Friday shopping with the family while L.Y. stayed at home with J.Y. The parties returned around 9:30 p.m. where appellant retreated to the guest room in the basement. A.Y. testified that there was a steel gate at the top of the stairs that you had to push down to open and it would make a screeching noise. A.Y. acknowledged that there was nothing significant to her when L.Y. got a snack that night, but now she recalls that it was very late, appellant was close in distance watching her, and it was not L.Y.'s normal routine. When she went upstairs for bed, she was pulled into the room where her daughters were crying and L.Y. said "I'm sorry mommy" and told her what had occurred in the basement. A.Y. locked the girls in the closet and left the room to call law enforcement.

{¶ 8} The state also called Deputies Darling and Ray to testify about their encounters on the scene. Each testified that on November 22, 2018, they received a call around 11:30 p.m. to respond to a sexual assault involving a minor. The officers were met by both parents of L.Y., and cousin, whose demeanors appeared calm. Due to the nature of the incident, the officers did not take any statements from the parties, instead they called Sgt. Arp. to the scene. However, deputies testified that J.Y., the father of L.Y., had first learned of the rape when they arrived at the residence and a verbal altercation arose between J.Y. and appellant when appellant came outside. Later that evening, the officers transported appellant to a mutually agreed upon location to safely remove him from the residence.

4.

{¶ 9} Detective Sergeant Kenneth Arp testified that after he had arrived on scene and informed appellant of the allegations, appellant stated he was having a vivid dream that he was rubbing his wife's vagina. Further, he admitted touching may have been possible, but he did not remember it occurring. Appellant's wife confirmed that these dreams have occurred in the past.

{¶ 10} Amanda McCall, S.A.N.E nurse, testified about the sexual assault examination that she conducted on L.Y. The exam consisted of an interview, a head to toe analysis, and an external swabbing of L.Y.'s vaginal and perianal area. There were no physical findings as a result of the exam and McCall concluded that this was consistent with what L.Y. had disclosed. Defense counsel objected to a line of questioning regarding McCall's opinion about the likelihood of finding physical evidence as improperly bolstering the state's witness on matters outside the scope of her written report. The state responded that based on her expertise and training in sexual assault cases, McCall can testify as to likelihood of finding physical evidence, and defense counsel could always "come forward [with their own expert] and have the battle of the experts." The court overruled the objection and stated McCall was qualified as an expert.

{¶ 11} Angela Wheeler, the investigator for Sandusky County Children Services, testified that an investigation was opened on November 26, 2018, and a forensic interview was conducted on November 30, 2018, after she had visited the home. Based on L.Y.'s intelligence, eye contact, and responsiveness, Wheeler concluded that this case was "indicated." In other words, the child said it happened and the perpetrator said it did

5.

not happen. Wheeler reported this to law enforcement. Wheeler admitted on cross examination that in the past she has experienced cases where children misperceive inappropriate conduct as sexual abuse or expose themselves to pornography then turn it into an allegation. On redirect, Wheeler stated there were no indicators that L.Y. was being untruthful. Defense counsel objected as it was outside the scope of what a layperson would say and judged the creditability of another witness, which increased the risk for prejudice. The court stated the door had been opened, but ultimately sustained the objection and agreed to later provide a curative instruction to the jury.

{¶ 12} The state also called Lindsey Nelsen-Rausch, a forensic scientist employed at the Ohio Bureau of Criminal Investigations, to testify about the DNA analysis conducted on L.Y's underwear and the other samples taken from L.Y.'s sexual assault examination with McCall. All vaginal samples were attributable to L.Y., but additional data containing unknown male DNA was uninterpretable because the sample "was just not enough."

{¶ 13} Between the first testing and the second testing, appellant's DNA samples were received and consistent with the unknown male profile. In totality, the interior back panel, interior crotch, interior front panel, exterior back panel, exterior front panel to mid crotch of the underwear had DNA consistent with appellant.

{¶ 14} There were no physical findings of appellant's DNA found on the external vaginal samples during the physical examination with McCall and the samples of the perianal area were also uninterpretable. Defense counsel raised the issue of whether

6.

these samples containing unknown male DNA could have been sent to the Y-STR DNA London Laboratory, which specialized in sexual assault cases, to determine the male profile. On redirect, the state asked whether there were samples remaining so defense counsel could test them if they wanted to. The trial court sustained defense counsel's objection, accepting that it was an attempt to improperly shift the burden of proof to the defense to bring in an independent expert and instructed the jury accordingly.

{¶ 15} After the state rested its case, defense counsel moved for a direct verdict pursuant to Crim.R. 29 for dismissal of all charges, which was denied by the trial court. Shortly after the jury instructions were read, defense counsel asked for a curative instruction that was previously discussed in the chambers, but it was not given. After the jury retired for deliberations, defense counsel renewed its motion for a direct verdict of acquittal on all counts, again it was denied.

{¶ 16} The trial court provided the following instruction on rape:

Count 4 alleges Rape. Before you find the Defendant guilty of the offense, you must find that the State * * * has proven beyond a reasonable doubt * * * that the Defendant did engage in sexual conduct with another who is not the spouse of the offender when the other person is less than 13 years of age * * * to wit, the Defendant did engage in sexual conduct by inserting his finger in the vaginal opening of L.Y., * * * age seven. The Prosecution need not prove that the victim physically resisted the

Defendant, nor, because the victim is under 12 does the State have to prove that force was used as an element of the crime.

{¶ 17} The jury posed two questions to the court during deliberations. First, "[i]f someone is dreaming and commits a crime, does that in any way make them less guilty of the crime?" The trial court responded by re-reading page 6 of the jury instructions containing the definition of "knowingly" and "purpose." Second, "[c]an the evidence of the second events on November 22nd be considered in our decision of the events on October 6th?" The trial court responded that the nature of the question does not involve motive and that each incident must be considered independently.

{¶ 18} The jury found appellant guilty of gross sexual imposition for the November 22, 2018 incident, importuning, and rape. However, the jury returned a verdict of not guilty on the second count of gross sexual imposition for the October 6, 2018 incident.

{¶ 19} On December 18, 2019, the state filed a motion to correct a clerical error in the verdict form from 2907.02(A)(2) to 2907.02(A)(1)(b). On December 19, 2019, at sentencing, the court held that the error was typographical and caused no prejudice to the defendant. Defense counsel filed a Motion to Vacate the Conviction and Order a New Trial. The trial court merged the gross sexual imposition and rape convictions before proceeding to sentence the defendant to a prison term of 18 years to life and classification as a Tier III sex offender. On December 26, 2019, the judgement entry was journalized. This appeal followed.

8.

## Law and Analysis

{¶ 20} Appellant sets forth the following Eleven Assignments of Error:

I. The trial court erred when it modified the jury verdict concerning the rape charge by sentencing the defendant for a conviction of R.C. 2907.02(A)(1)(b) when the jury form illustrates he was convicted of R.C. 2907.02(A)(2).

II. Appellant was denied due process and a fair trial pursuant to U.S. Const. amend. V, VI and XIV and Ohio Const. art. 1 § 10 when the trial court did not order an acquittal of the rape charge as the evidence was insufficient to sustain a conviction.

III. The trial court erred when it did not give an instruction under CR 417.07 Coma, Blackout R.C. 2901.21(C)(2), when the jury requested whether the defendant could be convicted if he was not conscious or dreaming when the alleged acts occurred and defense counsel requested instructions regarding consciousness.

IV. Appellant was denied due process and a fair trial pursuant to U.S. Const. amend. V, VI and XIV and Ohio Const. art. 1 § 10 as his convictions are against the manifest weight of the evidence and the jury's verdict was inconsistent with the evidence and testimony presented.

V. The trial court erred by permitting testimony from state expert, McCall, in violation of Ohio Crim. R. 16(K).

VI.  The trial court erred when it allowed demeanor and vouching testimony from the Children's Services Investigator that improperly commented on the truthfulness of the alleged victim over the objections of the defendant.

VII.  The trial court erred when it allowed hearsay demeanor and vouching testimony from the two responding police officers that did not fit an exception to hearsay.

VIII.  The trial court committed prejudicial error when it sustained objections to the introduction of the defendant's criminal history, which gave the jury the impression that the defendant was a convicted criminal, thus forcing the defendant into a position of waiving his 5th Amendment right to remain silent.

IX.  Appellant was denied due process and a fair trial pursuant to U.S. Const. amend. V, VI and XIV and Ohio Const. art. 1 § 10 when the prosecutor engaged in misconduct throughout the trial and during closing statements, which substantially prejudiced the appellant and misled the jury.

X.  Appellant was denied his constitutional right to effective assistance of counsel when the appellant's trial counsel failed to protect appellant's rights at trial.

XI. Appellant was denied due process as the cumulative errors committed by the trial court, the prosecutor, and the appellant's trial counsel combined denied appellant a fair trial.

### 1. The typographical error in the verdict form listing R.C. 2907.02(A)((2)instead of 2907.02(A)(1)(B) was an error in form, not in substance.

{¶ 21} Upon review of the verdict form, it was discovered that there was an error as it related to count four, the rape charge, citing it as R.C. 2907.02(A)(2), which requires the use of force, instead of R.C. 2907.02(A)(1)(b), which prohibits a person from engaging in sexual conduct with someone less than 13 years of age. It is undisputed that appellant was charged in the indictment with rape in violation R.C. 2907.02(A)(1)(b), not X. R.C. 2907.02(A)(2). Further, the jury instruction provided included the definition of rape under R.C. 2907.02(A)(1)(b):

Count 4 alleges Rape. Before you find the Defendant guilty of the offense, you must find that the State * * * has proven beyond a reasonable doubt * * * that the Defendant did engage in sexual conduct with another who is not the spouse of the offender when the other person is less than 13 years of age * * * to wit, the Defendant did engage in sexual conduct by inserting his finger in the vaginal opening of L.Y., * * * age seven. *The Prosecution need not prove that the victim physically resisted the Defendant, nor, because the victim is under 12 does the State have to prove that force was used as an element of the crime.* (Emphasis added.)

11.

This jury instruction also referred to this as R.C. 2907.02(A)(2), even though the correct citation was R.C. 2907.02(A)(1)(b). The court concluded that the reference in the verdict form was a "typographical" error, there was no prejudice to the defendant, and proceeded to sentencing under R.C. 2971.03(B)(1)(b). Appellant was *not* sentenced under 2971.03(B)(1)(c), which is the mandatory sentence for rape with force under R.C. 2907.02(A)(2).

{¶ 22} Appellant relies *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735 in seeking reversal. In *Pelfrey*, the defendant was charged with tampering of government records. The court held that a verdict form must include "either the degree of the offense * * * or a statement that an aggravating element has been found to justify convicting a defendant to a greater degree of a criminal offense. Otherwise, a guilty verdict constitutes a finding of guilty of the *least* degree of the offense charged." *Id.* at 424, R.C. 2945.75(A)(2). Neither the verdict form nor the trial court's entry mentioned the degree of Pelfrey's offense; neither did it mention that the records involved government records. *Id.* The court stated "the language of R.C. 2945.74(A)(2) is clear" and the court was unwilling to uphold Pelfrey's conviction based on additional circumstances. *Id.* at 425. Thus, Pelfrey's conviction of the lesser offense of tampering with records was affirmed pursuant to R.C. 2945.75(A)(2). *Id.* at 426.

{¶ 23} *Pelfrey* has no application to the facts currently before the court. We agree with appellee that this case is more akin to *State v. Miller*, 6th Dist. Lucas No. L-00-1018, 2000 WL 1867404 (Dec. 22, 2000). In *Miller*, this court held the verdict form

12.

citing R.C. 2923.23(B), rather than R.C. 2923 sufficient. It was clear from the record that the indictment charged the correct statute, the evidence presented at trial fit within the statute, the jury was instructed on the elements, and at no point were any elements in R.C. 2923.23(B) discussed. *Id.* at *3.

{¶ 24} Likewise, in *State v. Paige*, 7th Dist. Mahoning No. 17 MA 0146, 2018-Ohio-2782, ¶ 29, the verdict form did not create any confusion for the jury or call into question the jury's verdict for murder because it was not an instance where both felony murder and murder were charged in the indictment. No testimony was offered with respect to felony murder and counsel exclusively referred to the charge as "murder." *Id.* Thus, there was no constitutional issue arising from the modification of the clerical error.

{¶ 25} In this case, the error in the verdict form was discovered after the jury convicted appellant. The verdict form listed the rape conviction, as R.C. 2907.02(A)(2), which requires the use of force, instead of R.C. 2907.02(A)(1)(b), which simply prohibits a person from engaging in sexual conduct with someone less than 13 years of age. It is undisputed that appellant was charged in the indictment with rape in violation R.C. 2907.02(A)(1)(b), not R.C. 2907.02(A)(2). Further, the jury instruction included the definition of rape under R.C. 2907.02(A)(1)(b), but contained a typographical error identifying it as R.C. 2907(A)(2).

{¶ 26} The law is clear that "[c]lerical mistakes in judgements, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court *at any time*" so long as the "clerical mistake" is a "type of mistake

13.

or omission mechanical in nature, which is apparent on the record and which does not involve a legal decision or judgement by an attorney." Crim.R. 36. *See, e.g., In re Merry Queen Transfer Corp*, 266 F.Supp. 605, 607 (E.D. N.Y. 1967).

{¶ 27} Here, the trial court acted within its authority to correct the clerical error in the verdict form which referred to R.C. 2907.02(A)(2), instead of 2907.02(A)(1)(b). It did not in any way modify the conviction in a manner that would disturb the issues raised by the pleadings and evidence. It was clear from the record that the indictment charged the correct statute, the evidence presented at trial fit within the statute, the jury was instructed on the correct elements, and at no point was the element of force in R.C. 2907.02(A)(2) discussed. Appellant's first assignment of error is not well-taken.

### 2. Appellant was not charged with rape under R.C. 2907.02(A)(2), thus the state was not required to establish the elements of force or threat of force to establish the crime of rape.

{¶ 28} Appellant alleges that there was insufficient evidence to sustain his rape conviction under R.C. 2907.02(A)(2). However, as explained, the reference in the verdict form to R.C. 2909.07(A) was a clerical error. Appellant was charged, the jury was instructed, and appellant was convicted of rape under 2907.02(A)(1)(b). The trial court even specified in its instruction that the use of force was not an element of the crime with which appellant was charged, "The Prosecution need not prove that the victim physically resisted the Defendant, because the victim is under 12 nor does the State does not have to prove that force was used as an element of the crime." Appellant *does not*

allege in his brief that the there was insufficient evidence to convict appellant of rape under R.C. 2907.02(A)(1)(b).

{¶ 29} "With respect to sufficiency of the evidence, 'sufficiency' is a term of art meaning that the legal standard is applied to determine * * * whether the evidence is legally sufficient to support the jury verdict as a matter of law," *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), Crim.R. 29(A), whereas the "[w]eight of the evidence concerns the 'inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." Id. "[A] conviction based on legally insufficient evidence constitutes a denial of due process." Id. at 386. In reviewing the record for sufficiency, the relevant inquiry for an appellate court is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Smith, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997).

{¶ 30} Based upon the foregoing, appellant's Second Assignment of Error is found not well-taken and is denied.

### 3. The trial court did not commit plain error by not providing a "blackout" jury instruction.

{¶ 31} In his third assignment of error, appellant asserts that the trial court committed reversible error by failing to provide a "blackout" instruction to the jury pursuant to Ohio Jury Instructions, CR 417.07.

15.

**{¶ 32}** That proposed instruction states:

CR 417.07 Coma, blackout R.C. 2901.21(C)(2)

1. DEFINED. Where a person commits an act while unconscious as in a (coma) (blackout) (convulsion) due to (heart failure) (disease) (sleep) (injury), such act is not a criminal offense even though it would be a crime if such act were the product of a person's (will) (volition).

2. CONCLUSION. If you have a reasonable doubt whether the defendant was conscious at the time of such act, you must find that he is not guilty. If you find that the defendant was conscious, such finding does not relieve the state of its burden of establishing by the required weight of the testimony (all elements of the crime charged) (any lesser included offense) [that the act was (purposely) (knowingly) committed].

**{¶ 33}** In this case, shortly after jury deliberations commenced, a question was presented to the court from the jury. That question read "If someone is dreaming and commits a crime, does that in any way make them less guilty of the crime?"

**{¶ 34}** Appellant's counsel agreed with the court that the definition of "intent" should be re-read to the jury and further urged that the court specifically instruct that the jury must apply that definition to each element of each offense. Counsel also suggested that the jury was "asking about consciousness, and I – I would ask that the Court give them direction as to that." Ultimately, without objection, the court re-read the relevant

16.

portions of the jury instructions concerning "knowingly" and "purpose." Trial counsel did not specifically ask for any additional instruction concerning "blackout" or "coma."

{¶ 35} Thus, the record establishes that at no point did trial counsel specifically request that the jury be given an instruction on "blackout" or "coma" either before the jury retired to consider its verdict nor was there an objection interposed to the jury instructions given after the question was presented.

{¶ 36} In our consideration of this assignment of error, we are guided by Crim.R. 30(A) which states in relevant part:

> On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury. Ohio Crim. R. 30

{¶ 37} Thus, despite appellant's invitation to engage in a de novo review with respect to the failure to include a "blackout" instruction, we are left with but one avenue to consider his arguments. That is the "plain error" exception to this rule. *State v. Tucker*, 6th Dist. No. WD-16-063, 2018-Ohio-1869, ¶ 18-19, citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001 (1982).

{¶ 38} Plain error is error that affects substantial rights. Crim.R. 52(B). In determining whether plain error occurred, we must examine the alleged error in light of

17.

all of the evidence properly admitted at trial. *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

{¶ 39} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano* 507 U.S. at 725,734, 113 S.Ct. 1770, 123 L.E.2d 508 (1993); *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to "prevent a manifest miscarriage of justice." *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 40} Plain error should be found only in exceptional circumstances and only to prevent a manifest miscarriage of justice. Reversal is warranted only if the outcome of the trial clearly would have been different absent the error.

{¶ 41} The record of this case establishes only one instance in which anything remotely resembling a reference to an unconscious state occurred when a detective interviewed appellant. While conducting his initial interview standing in the garage of the residence, Detective Arp testified that appellant had recently told his wife that he had "vivid dreams" concerning explicit sexual acts. During this conversation with the deputy, appellant "stated something to the effect of, asked if (victim) was okay – if it happened, is (victim) okay." There was no other evidence introduced by appellant concerning unconsciousness, blackout or coma suffered by him.

18.

{¶ 42} Ohio courts have generally concluded that a defendant's claim that his actions were involuntary because he was asleep or unconscious is in the nature of an affirmative defense. *State v. LaFreniere,* 85 Ohio App.3d 840, 849, 621 N.E.2d 816 (11th Dist. 1993). Affirmative defenses include those defenses which are, "peculiarly within the knowledge of the accused." R.C. 2901.05(A)(1). The burden is on the accused to prove an affirmative defense by a preponderance of the evidence. R.C. 2901.01(A).

{¶ 43} Here, however, the offense is not one that could be committed as a result of a blackout. No reflexes, convulsions, or other involuntary bodily movements by appellant could be involved in the conduct described by the victim.

{¶ 44} Additionally, appellant presented no medical testimony in support of his affirmative defense to establish that the appellant was in an unconscious state at the time he committed the criminal acts. *State v. Hackedorn,* 5th Dist., Ashland No. 2004-COA-053, 2005-Ohio-1475, ¶ 41-43

{¶ 45} In this case, the trial court's failure to instruct the jury on defendant's "blackout" defense did not constitute plain error.

{¶ 46} For the forgoing reasons, appellant's third assignment of error is found not well-taken and denied.

### 4. Appellant's convictions of rape and importuning were not against the manifest weight of the evidence.

{¶ 47} Appellant asserts that his convictions were against the manifest weight of the evidence. Appellant claims that this essentially was a case of witness credibility

19.

determination, where the appellant himself did not testify, and claims that L.Y.'s testimony was fragmented and inconsistent, and alleges the state's other witnesses improperly vouched for credibility of other witnesses.

{¶ 48} Applying the "manifest weight" standard, we sit as the "thirteenth juror," and may disagree with the jury's resolution of conflicting testimony. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We review the entire record, weigh the evidence and any reasonable inferences, consider the creditability of witnesses, and determine whether the jury lost its way in resolving conflicts in the evidence, creating such a manifest miscarriage of justice that reversal and a new trial is necessary. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d. 172, 175, 485 N.E.2d 717 (1st Dist. 1983). Reversal on manifest weight grounds is for only the exceptional case "in which the evidence weighs heavily against convictions." *Thompkins* at 387, quoting *Martin* at 175.

{¶ 49} Utilizing this standard, the court must "give great deference to the fact finder's determination of the witnesses' creditability." *State v. Covington*, 10th Dist. Franklin No. 02AP-5, 2002-Ohio-7037, ¶ 16. The jury is able to "view the demeanor, voice inflections, and gestures of witnesses testifying before it." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1994). Hence, the jury is in the "best position to weigh the evidence and judge the creditability of witnesses." *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶ 50} The evidence introduced at trial against appellant included L.Y.'s testimony of the sexual conduct. She explained one instance by noting that appellant told

20.

her to change into a nightgown so he could give her a massage, she felt his stomach against her back, she felt his finger insert into her vagina, and she felt pain. It is undisputed that L.Y. was less than thirteen years of age. L.Y. testified that appellant used his other hand to expose his penis, was breathing heavily and sweating, licking his fingers, touching his penis and inserting a finger into her vagina. Appellant's DNA were also found on, the interior back panel, interior crotch, interior front panel, exterior back panel, and exterior front panel to mid crotch of the underwear.

{¶ 51} While appellant's trial counsel vigorously cross examined witnesses, including the S.A.N.E nurse during cross-examination, which arguably revealed some inconsistencies in her testimony, the jury's resolution of factual and credibility disputes in this case against appellant does not equate to a finding that the jury's verdict was against the manifest weight of the evidence. "When there exists two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed." *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). A mere inconsistency cannot be said to cast doubt on the sufficiency of the jury's verdict given the ample opportunity to cross-examine the witness and the remaining admissible evidence. A credibility determination of this nature is precisely what the trier of fact intends to resolve.

{¶ 52} The jury concluded that the evidence presented at trial established that appellant committed rape in violation of R.C. 2907.02(A)(1)(b) and importuning in

21.

violation of R.C. 2907.07(A). In reviewing the evidence in the record, we do not find this to be the exceptional case in which the evidence weighs heavily against conviction. Accordingly, appellant's Fourth Assignment of Error is found not well-taken.

### 5. The trial court erred in admitting the S.A.N.E. nurse's expert testimony regarding the likelihood of finding physical evidence of sexual assault despite the state's Crim.R. 16(K) violation; the error was harmless error.

{¶ 53} At trial, Amanda McCall, a S.A.N.E. (Sexual Assault Nurse Examiner) nurse testified. She had prepared her report based upon her examination of L.Y. at the time of the incident, in which she stated there were "no physical findings" of sexual assault.

{¶ 54} At trial, the state questioned the nurse on direct examination about the likelihood or unlikelihood of finding physical evidence of a sexual assault through photographs or trauma to the vaginal or anal area. Appellant objected to this line of questioning on the grounds that this opinion had not been disclosed in the report to defense counsel pursuant to Crim.R. 16(K) prior to trial.

{¶ 55} In this appeal, the appellee argues that this testimony was admissible as the testimony of a lay witness as she was never formally qualified as an expert witness. However, at trial, counsel for the state of Ohio asked all of the foundational questions necessary for qualification regarding her experience as a nurse and level of specialized training in sexual assault care and her employment at the Nord Center in Lorain County. The prosecutor stopped short just at the point of asking the trial court that she be qualified as an expert. The nurse testified, without objection, regarding her educational

22.

background as well as her training and experience. In fact, in overruling this specific objection the trial court referred to her as an expert qualified to continue her testimony. From this record, therefore, Ms. McCall was properly qualified as an expert.

{¶ 56} Ms. McCall's opinion about the likelihood or unlikelihood of finding physical evidence of a sexual assault through photographs or trauma was clearly related to matters beyond the knowledge or experience possessed by lay persons. As such, it was expert testimony under Evid.R. 702(A), and Ms. MCall should have been qualified as an expert under Evid.R. 702(B). *State v. Williams*, 9th Dist. Summit No. 25716, 2011-Ohio-6604, ¶ 22.

{¶ 57} We review the admission of expert testimony for an abuse of discretion. *State v. Hall*, 1st Dist. Hamilton Nos. C-170699, 2019-Ohio-2985, ¶ 9. Crim.R. 16(K) requires that an expert prepare a "written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion and shall include a summary of the expert's qualifications." In determining whether the state's failure to comply with Crim.R. 16(K) prejudices the defendant, the Supreme Court of Ohio has applied a three-prong analysis, questioning (1) whether the error had an impact on the verdict; (2) whether the error was harmless beyond a reasonable doubt; (3) whether the remaining evidence establishes the defendant's guilt beyond a reasonable doubt. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 27-29.

{¶ 58} The Supreme Court applied this analysis most recently in *State v. Boaston*, 160 Ohio St.3d 46, 153 N.E.3d 44, 2020-Ohio-1061, ¶ 64. In *Boaston*, the state's expert

23.

testified as to the time of death, which was "not essential to the state's prosecution of the charged crime," rather it was "relevant only because it * * * corroborated the precise time frame that Boaston's own statement and cell-phone records already established." The court found the admission of this testimony error because "Crim.R. 16(K) would have been satisfied through a single additional sentence [as to time of death.]" *Id.* at ¶ 57. However, the court determined the error was harmless under Crim.R. 52(A) because the "testimony did little more than connect the dots that were already too readily apparent" and "the state had established guilt beyond a reasonable doubt." *Id.* at ¶ 64.

{¶ 59} In this case, the trial court performed *no* Crim.R. 16(K) analysis in overruling defense counsel's objection to McCall's expert testimony regarding the likelihood or unlikelihood of finding physical evidence of a sexual assault through photographs or trauma to the vaginal or anal area.

{¶ 60} Upon review, we find that the state was obligated to disclose this opinion pursuant to Crim.R. 16 (K). As in *Boaston,* the admission of McCall's testimony regarding the likelihood or unlikelihood of finding physical evidence was error because "Crim.R. 16(K) would have been satisfied through a single additional sentence." *Boaston* at ¶ 57.

{¶ 61} Finding that the trial court erred in overruling defense counsel's Crim.R. 16(K) objection to McCall's testimony, we next turn to the question of whether the Crim.R. 16(K) violation prejudiced the appellant or whether it constituted harmless error. Specifically, whether (1) the violation had an impact on the verdict; (2) whether the error

24.

was harmless beyond a reasonable doubt; (3) whether the remaining evidence establishes the defendant's guilt beyond a reasonable doubt.

{¶ 62} Upon review of the record, considering the additional evidence of appellant's DNA found in L.Y.'s underwear, L.Y.'s testimony that appellant sexually assaulted her, and the testimony of L.Y.'s relatives of L.Y.'s behavior and reaction following the assault, we conclude that the remaining evidence outside of McCall's "likelihood" testimony in this case established appellant's guilt beyond a reasonable doubt.

{¶ 63} Because there is not a reasonable possibility that the outcome of this trial would otherwise have been different, the admission of McCall's opinion on this issue was harmless error. *Williams, supra,* 9th Dist. Summit No., 25716, 2011-Ohio-6604, ¶ 23-24.

{¶ 64} We find appellant's Fifth Assignment of Error not well-taken and it is denied.

### 6. Although the state improperly elicited testimony from the case worker on re-direct examination that there were no indicators that the victim "was untruthful", the error was not prejudicial since there was substantial evidence, including DNA evidence, to convict appellant.

{¶ 65} Sandusky County Children Services caseworker Angela Wheeler admitted on cross examination that in the past she has been involved in cases where children misperceive inappropriate conduct as sexual abuse or expose themselves to pornography then turn it into an allegation. On redirect, Wheeler testified there were no indicators that L.Y. was being "untruthful." Defense counsel objected to this testimony as it was outside the scope of what a layperson could testify to and effectively vouched for the creditability

25.

of another witness.  The court sustained the objection agreeing to give a curative instruction, which it ultimately failed to do.[2]

{¶ 66} A witness may not testify as to the truthfulness of another witness.  *See State v. Craig,* 8th Dist. Cuyahoga No. 94455, 2011-Ohio-206, ¶ 17, citing *State v. Young,* 8th Dist. Cuyahoga No. 79243, 2002-Ohio-2744, (plain error found where police officers usurp the role of the jury by testifying that the witness is truthful).  Here, Wheeler testified that there no indicators that L.Y. was being "*untruthful*".  (Emphasis added.)  Wheeler's testimony that there was no indicators that L.Y.'s testimony was "untruthful" was akin to testifying that L.Y.'s testimony was truthful and thus is improper.

{¶ 67} In *State v. Craig,* the court addressed a similar scenario.  Although the court found that a police officer should not have been permitted to testify that he "figured [the witness] was lying", given the context of the testimony and given the fact there was substantial evidence apart from the officer's improper testimony, with which to convict the defendant, the court concluded that the trial court's erroneous admission of the officer's testimony was harmless error. *Id.* at ¶ 18.

{¶ 68} As in *Craig,* despite the error in admitting Wheeler's testimony, and as noted in our analysis of appellant's Fifth Assignment of Error, there was still substantial evidence by which the jury convicted appellant. Specifically, L.Y. testified as to the

---

[2] Defense counsel renewed its request for the promised curative instruction prior to deliberations, however, the trial court did not offer a reason for subsequently failing to provide the curative instruction prior to the jury beginning deliberations.

26.

assault, her family members testified as to her behavior following the assault, and the DNA evidence presented shows that appellant's DNA was found on L.Y.'s underwear. In totality, the interior back panel, interior crotch, interior front panel, exterior back panel, exterior front panel to mid crotch of the underwear had DNA consistent with appellant. Lindsey Nelsen-Rausch testified that the odds of another person having the DNA profile of appellant were 1 in 6 billion and that only an identical twin could have the same DNA profile of appellant present on L.Y.'s underwear. Thus, there was substantial evidence outside of Wheeler's improper testimony, for the jury to find appellant guilty of the rape and importuning. Appellant's Sixth Assignment of Error is found not well-taken.

### 7. The trial court did not commit plain error in admitting the testimony of the responding police officers.

{¶ 69} Appellant next argues that vouching testimony of the two responding police officers is inadmissible hearsay designed to bolster the victim's credibility to suggest that because the victim's family was visibly upset, something must have happened.

{¶ 70} Traditionally, errors complained of that are not accompanied by a contemporaneous objection or not properly preserved by trial counsel are waived. *Slagle*, 65 Ohio St.3d at 604, 605 N.E.2d 916. However, Crim.R. 52(B) provides "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In order to warrant reversal, appellant must establish that "the

outcome of the trial would have been different but for the trial court's allegedly improper actions." *Waddell*, 75 Ohio St.3d at 166, 661 N.E.2d 1043.

{¶ 71} Hearsay evidence is not unduly prejudicial when "the evidence in favor of conviction, absent the hearsay, [is] so overwhelming that the admission of those statements was harmless beyond a reasonable doubt." *State v. Kidder*, 32 Ohio St.3d 279, 284, 513 N.E.2d 311 (1987). Regardless of whether the admission of hearsay testimony is error, we must still determine whether such error is prejudicial. "The 'extremely high burden' of demonstrating plain error is on the defendant." *State v. Chapman*, 8th Dist. Cuyahoga No. 107375, 2019-Ohio-1452, ¶ 20, quoting *State v. Black*, 2019-Ohio-4977, N.E.3d 1132 (8th Dist.).

{¶ 72} As noted, appellant did not object to the admission of the officer's testimony. Thus, we must apply a plain error level of review. We find that the officers' statements were not hearsay. That is - their statements were not for the truth of the matter asserted, but instead were offered for the purposes of showing the steps of the officers' investigation. Moreover, we have previously discussed the additional substantial evidence of appellant's guilt, in particular the DNA evidence, which supported appellant's convictions for rape and importuning. Appellant has failed to demonstrate plain error and we find appellant's Seventh Assignment of Error not well-taken.

### 8. The trial court did not commit plain error by precluding the admission of evidence as to appellant's lack of a prior criminal history.

{¶ 73} Appellant next alleges that the trial court erred by precluding the introduction of evidence that appellant had no criminal history after it had been

announced in opening statements. First, the trial court informed the jury that opening statements are not evidence and what defense counsel said "may or may not be true." Later, the trial court sustained the state's objection on grounds that evidence of the officer's research into defendant's criminal history was not relevant to whether the defendant committed the sex offense.

{¶ 74} We are mindful that "appellate courts must not disturb trial court rulings on character evidence unless there is a clear showing of prejudicial abuse of discretion." *United States v. Hewitt*, 634 F.2d 277, 280 (5th Cir.1981). *See State v. Jackson*, 3d Dist. Allen No. 1-19-83, 2020-Ohio-5224, ¶ 28 (a court applies an abuse of discretion standard to evidentiary decisions regarding Evid.R. 404 matters).

{¶ 75} In *Sidney v. Little*, the court held that because character was not at issue in the case, Evid.R. 404 may apply. *City of Sidney v. Little*, 119 Ohio App.3d 193, 198, 694 N.E.2d 1386 (3d Dist.1997). The general rule is that "[e]vidence of a person's character or trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion," with the exception that "evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible * * *." Evid.R. 404(A)(1). "Pertinent" has been deemed synonymous with "relevant." *United States v. Angelini*, 678 F.2d 380 (1st Cir.1982).

{¶ 76} Here, whether appellant had a criminal history was not relevant to establishing a complete defense nor would it aide the jury's determination of a fact of consequence in a sexual assault case. Appellant's defense was that the victim fabricated

the allegations, therefore, whether appellant had a criminal history, again, was irrelevant to establishing a complete defense. Instead, it appears that appellant was offering evidence of his lack of prior criminal convictions as evidence of proof of "other acts" lawful behavior, i.e., since he had no prior criminal history, he did not commit the current sexual assault of L.Y. We cannot say that the trial court abused its discretion in refusing to permit evidence of the lack of appellant's prior criminal history.

{¶ 77} Accordingly, we find appellant's Eighth Assignment of Error not well-taken.

### 9. Appellant has failed to prove prosecutorial misconduct, which prejudicially affected his substantive rights.

{¶ 78} Appellant identifies several instances in his Ninth Assignment of Error which he asserts arise to prosecutorial misconduct and otherwise deprived him of his due process rights due to: (1) improper burden shifting; (2) inadequate curative instruction, (3) improper and prejudicial hearsay and demeanor testimony throughout the case-in-chief; (4) intentionally misstating testimony; (5) denigration of defense counsel; and (6) inappropriate sympathy ploys or emotional pleas during closing statements.

{¶ 79} To address these arguments, we must first determine: (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected appellant's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The inquiry is guided by four factors: (1) the nature of the remarks; (2) whether an objection was made by counsel; (3) whether corrective instructions were given by the

30.

court; and (4) the strength of the evidence against the defendant. *Sidney v. Walters*, 118 Ohio App.3d 825, 829, 694 N.E.2d 132 (3d Dist.1997).

{¶ 80} Moreover, to the extent defendant did not object to allegedly improper statements, all error is waived but for plain error. *Slagle*, 65 Ohio St.3d at 604, 605 N.E.2d 916. Reversal is warranted where the improper statements "pervade the trial to such a degree that there was a denial of due process." *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993). When making this determination, we must consider the effect of any misconduct in the context of the entire trial. *Id.* "The touchstone of this analysis is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶ 81} As explained in our analysis of appellant's Sixth and Seventh Assignments of Error, the alleged hearsay of the officers arriving on the scene, was in fact not hearsay. And the "demeanor" testimony of Wheeler regarding the lack of non-truthfulness indicators relating to her interview of L.Y. was not prejudicial.

#### (A) The trial court's curative instruction on burden shifting

{¶ 82} We begin our analysis with the appellant's allegations that the trial court failed to give an adequate curative instruction as promised for the improper burden shift that occurred in Nelson-Rausch's testimony. On cross examination, defense counsel raised the issue of whether samples containing unknown male DNA could have been sent to the Y-STR DNA London Laboratory, which specialized in sexual assault cases, to

31.

determine the male profile. On redirect, the state asked whether there were samples remaining so defense counsel could test them if they wanted to. The trial court sustained defense counsel's objection, accepting that it was an attempt to improperly shift the burden of proof to the defense to bring in an independent expert and instructed the jury accordingly. The curative instruction provided:

The Defendant had no burden of proof here. The burden of proving that the sexual assault occurred is upon the State of Ohio beyond a reasonable doubt. Defendant has no burden to conduct additional testing. It's the State's burden, so you're instructed to forget, if you can, the line of questioning from the Prosecutor regarding the availability of additional underwear or --- or places upon the underwear for testing.

{¶ 83} The jury is presumed to have followed the court's instructions. *State v. Jones*, 91 Ohio St.3d 335, 344, 744 N.E.2d 1163 (2001). The relevant inquiry is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

{¶ 84} Upon review, we find the trial court provided a curative instruction correctly instructing the jury that the burden was on the state to show that appellant committed the sexual assault and that appellant had no obligation or burden to conduct additional testing. We do not find that the presumption that the jury followed the curative

instruction has been rebutted. Thus, appellant's challenge to the trial court's curative instruction is found not well-taken.

### (B) Failure to provide promised curative instructions

{¶ 85} Although the record is clear that the trial court agreed to provide a curative instruction after sustaining defense counsel's objection to Wheeler's testimony regarding the lack of non-truthful indicators in her interview of L.Y., for whatever reason, and despite a second request from defense counsel prior to deliberations, the trial court failed to provide the curative instruction.

{¶ 86} A similar situation arose in *U.S. v. Resnick*, wherein the district court, for reasons entirely unknown, failed to give a promised curative instruction. *U.S. v. Resnick*, 488 F.2d 1165, 1168 (5th Cir.1974). On appeal, the court determined that the failure to give the instruction was harmless error. *Id.*

{¶ 87} As in *Resnick,* we determine that the trial court's failure to provide the promised curative instruction was harmless error in this case and we have detailed the additional, substantial non-error evidence, including the DNA evidence, which supported the jury's finding that appellant committed the assault of L.Y.

### (C) The prosecutor's statements

{¶ 88} Appellant next challenges the prosecutor's statement in closing argument that "defendants DNA was inside and outside her underwear in several places" in his first closing argument. Prosecutors are accorded "wide latitude" and may comment in closing argument on testimony of defense witnesses, "including the defendant, and conclusions

33.

to be drawn therefrom." *State v. Draughn*, 76 Ohio App.3d 664, 670, 602 N.E.2d 790 (5th Dist.1992). On review, we note that the testimony presented was that appellant's DNA was found in the interior and exterior panels of L.Y.'s underwear. Accordingly, we cannot conclude that the prosecutor's statements in closing argument amount to prosecutorial misconduct.

### (D) Alleged denigration of defense counsel

{¶ 89} Next, appellant's trial counsel objected to a statement by the prosecutor in his final rebuttal closing arguments that suggested defense counsel's closing argument to the jury was "an appeal to you to consider outside of that very narrow focus of the instructions, testimony, exhibits is an inappropriate appeal to you to … violate your oath." The trial judge overruled the objection on the basis that the state was explaining to the jury that they are to consider only the evidence that was presented, rather than closing statements.

{¶ 90} We have held that comments that degrade defense counsel for doing his job inherently denigrate the defendant and are improper. *State v. Taylor*, 6th Dist No. L-12-1037, 2013-Ohio-3066, ¶ 21.

{¶ 91} While a prosecutor must zealously advocate his position, he must do so within the boundaries of acceptable argument and must refrain from the desire to make outlandish remarks, misstate evidence, or confuse legal concepts. *State v. Tenace*, 6th Dist. L-00-1002, 2003-Ohio-3458, ¶ 102, *aff'd in part, rev'd in part*, 2006-Ohio-2417, , 109 Ohio St. 3d 255, 847 N.E.2d 386, ¶ 102, citing *State v. Fear*, 86 Ohio St.3d

34.

329, 336, 715 N.E.2d 136 (1999), *certiorari denied*, 529 U.S. 1039, 120 S.Ct. 1535, 146 L.Ed.2d 349 (2000).

{¶ 92} We agree that the prosecutor engaged in improper behavior with his remarks directed at defense counsel and his motives for making closing argument.

{¶ 93} However, our focus is on the issue of whether the trial was fair, not the culpability of the prosecutor. *Tenace, supra*, citing *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). We also must evaluate the prosecutor's statements carefully so as not to view these isolated comments out of context and in the worst light. *State v. Myers*, 97 Ohio St.3d 335, 2002–Ohio–6658, 780 N.E.2d 186, ¶ 142, *certiorari denied* 539 U.S. 906, 123 S.Ct. 2254, 156 L.E.2d 116 (2003).

{¶ 94} Upon review of the record, we disagree with appellant about the prejudicial nature of the prosecutor's conduct in this instance. The misconduct cited did not pervade the trial to such a degree that there was a denial of due process. *See State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993). We have no reason to believe that the outcome of the trial was affected by the prosecutor's improper comments. *See State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 149. Such prejudice is not shown when, after consideration of the entire trial, it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper prosecutorial actions or comments.

{¶ 95} For these reasons, we find appellant's complaints regarding prosecutorial misconduct not well-taken.

**10.  Appellant has not demonstrated that the ineffective
assistance of trial counsel deprived him a right to a fair trial.**

{¶ 96} The Sixth Amendment recognizes that counsel plays a crucial role in the ability of the "adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 688, 685, 104 S.Ct. 205, 280 L.Ed.2d 674 (1984).  Courts have not elaborated on this constitutional requirement, however, "its purpose—to ensure a fair trial—serves as the guide." *Id.* at 686.

{¶ 97} On appeal, the proper measure of counsel's assistance is measured by "objective standards of reasonableness under prevailing professional norms" and courts must be "highly deferential" with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  In other words, the criminal defendant must demonstrate that such assistance was not considered "sound trial strategy." *Id.* "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgement." *Id.* at 691. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding * * * *Id.* at 693.  Rather, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 137, 538 N.E.2d 373 (1989)**.**

{¶ 98} In this case, appellant identifies the following incidents of alleged ineffective assistance of counsel:  (1) the failure to object to vouching testimony; (2)

36.

sympathy ploys; (3) improper statements on behalf of the prosecution; (4) clarification on defendant's lack of criminal history, and the blackout instruction.

{¶ 99} Here, as we have discussed, none of the claimed ineffective assistance of counsel errors have merit. The court found that the officer's alleged vouching error was in fact non-hearsay testimony offered to explain the officers' investigative actions once they arrived on the scene. The court found no evidence of prosecutorial misconduct, no error in precluding the introduction of appellant's prior lack of a criminal history and no error with respect to the trial court's resolution of the claimed "black out" instruction.

{¶ 100} As to the alleged error relating to sympathy ploys by the prosecution, we find that the jury was adequately instructed that "sympathy is a common human experience, and the law does not expect you to be free from this normal reaction; however, the law and your oath as jurors require you to disregard both sympathy and prejudice. You must not permit either to influence your decision." A short statement by appellant that "the prejudice from defense counsel's actions at trial is obvious" provides no workable principle for purposes of this court's review, and does not suffice. Accordingly, appellant's tenth assignment of error is without merit.

### 11. The record does not establish cumulative error in this matter warranting reversal.

{¶ 101} As noted above, the only two errors identified by this court related to the state's failure to disclose McCall's expert testimony pursuant to Crim.R. 16(K) in her report that the lack of physical findings during the S.A.N.E. examination did not foreclose that the abuse occurred, and Wheeler's limited testimony regarding the lack of

37.

non-truthfulness indicators in Wheeler's interview of L.Y. We determined that McCall's testimony, although it was required to be disclosed pursuant to Crim.R. 16(K) was common expert testimony offered in sexual assault case and although not disclosed, was not a surprise to defense counsel. Similarly relating to the lack of "non-truthfulness indicators," we concluded Wheeler's testimony was harmless error due to remaining substantial evidence supporting appellant's conviction, namely that appellant's DNA was found on L.Y.'s underwear. None of the prosecutor's other comments prejudiced the appellant's right to a fair trial.

{¶ 102} Appellant cites *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, for the proposition that the cumulative errors unduly prejudiced the appellant's due process rights and requires the conviction be reversed. Nevertheless, the court in *Brown* affirmed the conviction for aggravated murder despite irrelevant testimony that portrayed the defendant in a negative light. *Id.* at ¶ 25. The court reasoned that while improper testimony was admitted, the error was harmless because substantial evidence had conclusively established defendant's guilt. *Id*. As a result, the court found that the trial court had not abused its discretion. *Id*. at ¶ 24.

{¶ 103} Having first determined that no single error was outcome determinative, in considering the cumulative impact of both harmless errors, we do not find this is a case where appellant suffered a due process violation due to the two harmless errors. Appellant's Eleventh Assignment of Error is found not well-taken.

38.

## Conclusion

{¶ 104} Based upon the foregoing, we find appellant's 11 assignments of error not well-taken. We find that the clerical error in the verdict was an error in form, not substance and appellant suffered no prejudice. There was sufficient evidence presented to convict appellant of rape under 2907.02(A)(1)(b), there was evidence in the record substantiating the use of force in appellant's sexual assault of L.Y., a seven-year old girl. The trial court did not abuse its discretion in not providing a coma/blackout jury instruction. Appellant's conviction for rape and importuning were not against the manifest weight of the evidence.

{¶ 105} Although the state failed to comply with Crim.R, 16(K) and trial court failed to consider Crim.R. 16(K) in permitting McCall to testify regarding the likelihood or unlikelihood of finding physical evidence of a sexual assault during the S.A.N.E. examination, the testimony was not a surprise to defense counsel and any error in admitting the testimony was harmless error. The failure to provide a curative instruction regarding testimony of the children's services investigator regarding the lack of indicators as to L.Y's "non-truthfulness" was harmless error considering the substantial additional evidence, including DNA evidence, which supported appellant's conviction.

{¶ 106} The trial court's decision permitting the officers to testify regarding their investigation at the scene was not hearsay or improper vouching testimony. The trial court did not err in not permitting testimony relating to appellant's lack of criminal history. The trial court did not err in failing to find prosecutorial misconduct. Appellant

39.

has failed to demonstrate that he received the ineffective assistance of counsel in the trial court. Appellant has failed to demonstrate cumulative error.

{¶ 107} The judgement of the Sandusky Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. It is so ordered.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____

JUDGE

Christine E. Mayle, J. _____

Gene A. Zmuda, P.J. _____
CONCUR.

JUDGE

_____

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.