[Cite as *State v. Kwambana*, 2014-Ohio-2582.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


STATE OF OHIO,                                          :

      Plaintiff-Appellee,                         :

      - vs -

KABINGA REUBEN KWAMBANA,            :

      Defendant-Appellant.                      :

CASE NO. CA2013-12-092

O P I N I O N
6/16/2014


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2013CR000238


D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton and Judith Brant, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Laufman & Napolitano, Paul M. Laufman, 4310 Hunt Road, Cincinnati, Ohio 45240, for defendant-appellant


**S. POWELL, J.**

{¶ 1}   Defendant-appellant, Kabinga Reuben Kwambana, appeals from the aggregate 32-year prison sentence he received in the Clermont County Court of Common Pleas after he pled guilty to four counts of kidnapping.  For the reasons outlined below, we affirm.

{¶ 2}   On April 17, 2013, the Clermont County grand jury returned an indictment charging Kwambana with one count of aggravated robbery in violation of R.C. 2911.01(A)(1) and four counts of kidnapping in violation of R.C. 2905.01(B)(2), all first-degree felonies.

Each of the five counts also included a firearm specification. The charges stemmed from Kwambana's participation in the April 13, 2013 armed robbery of the Golden Corral restaurant located at 4394 Glen Este-Withamsville Road, Cincinnati, Clermont County, Ohio, with his co-defendant, Kenneth Chipemba.

{¶ 3} On October 13, 2013, Kwambana entered into a plea agreement, wherein he agreed to plead guilty to the four counts of kidnapping in exchange for the aggravated robbery and five gun specifications being dismissed. During the plea hearing, the state read the following facts into the record:

> As to Counts 2 through 5, on or about April 13, 2013, at 4394 Glen Este Withamsville Road, Cincinnati, Ohio, 45245, located in Clermont County, Ohio, by force, threat, or deception [Kwambana] did knowingly under the circumstances that created a substantial risk of serious physical harm to the victim, restrained another person's liberty and [Kwambana] did not release the victims in a safe place unharmed.
>
> Specifically, just before Zackary Elza, the manager of the Golden Corral restaurant, located at the above address, exited the restaurant to walk fellow employee Nathan Franz to his vehicle they were approached by [Chipemba] who was brandishing a sawed off shotgun and who ordered the two employees into the common area of the restaurant. Once [Chipemba], Mr. Elza, and Mr. Franz were back inside the restaurant in the common area, [Kwambana] entered the building.
>
> While [Chipemba] set with the gun, [Kwambana] began to bind Mr. Elza and bound Mr. Franz's hands and feet with the zip ties and then hogtied his hands and feet together. Another Golden Corral employee, Robert Miler, was closing up the business for the night when he entered the common area and noticed his coworkers on the floor. Mr. Miller noted [Chipemba] holding the gun and was then ordered to sit down with the other employees.
>
> [Kwambana] proceeded to bind Mr. Miller's hands and legs with zip ties and then hogtied his hands and feet together. Finally, Golden Corral employee Bla Dimirventura was working in the dish room of the restaurant when [Chipemba and Kwambana] entered. [Chipemba and Kwambana] had Mr. Dimirventura exit the kitchen – the dish room and sit next to the others where they then also bound his hands and feet with zip ties and then hogtied his hands and feet together.

Once the employees were bound, [Chipemba and Kwambana] ordered Mr. Elza to enter the office so that he could remove money from the safe. [Kwambana] then tied Mr. Elza's hands and feet up, binding his hands and feet separately. While [Kwambana] was finishing up, the alarm company called and [Chipemba] picked up the phone and handed it to [Kwambana] who placed the phone to Mr. Elza's ear and told him to report that everything was okay.

After successfully completing the theft offense, [Chipemba and Kwambana] left the office in preparation to flee the restaurant. [Chipemba and Kwambana] left Mr. Elza bound in the office and the other men bound in the common area of the restaurant. Unbeknownst to [Chipemba and Kwambana], officers of the Union Township Police Department had already responded and set up a perimeter outside the restaurant. Before officers entered the restaurant, Mr. Franz had freed himself from the zip ties binding his hands [and] entered the office to assist Mr. Elza.

Mr. Miller and Mr. Dimirventura followed seconds later and stayed in the office after that. At that point, [Chipemba and Kwambana] attempted to flee the Golden Corral but both [men] were apprehended outside as they fled the building with the firearm used in the offense as well as the money taken.

Kwambana did not object to these facts as they were read into the record by the state. After the facts were read into the record, Kwambana entered his guilty plea to the four counts of kidnapping, which the trial court accepted.

{¶ 4} On November 12, 2013, the trial court held a sentencing hearing. As part of that hearing, Kwambana argued his four kidnapping convictions were allied offenses of similar import that should merge for purposes of sentencing. The trial court disagreed, concluding that merger was not appropriate as "these are four separate individuals who were kidnapped." After concluding the four kidnapping charges did not merge, the trial court then sentenced Kwambana to serve eight years for each offense, for a total aggregate term of 32 years in prison.

{¶ 5} Kwambana now appeals from the trial court's sentencing decision, raising a single assignment of error for review.

{¶ 6} THE TRIAL COURT ERRED IN FAILING TO MERGE THE FOUR COUNTS OF

- 3 -

KIDNAPPING.

{¶ 7}  In his single assignment of error, Kwambana argues the trial court erred by failing to merge his four kidnapping convictions for purposes of sentencing.  We disagree.

{¶ 8}  Pursuant to R.C. 2941.25, Ohio's multiple-count statute, the imposition of multiple punishments for the same criminal conduct is prohibited.  *State v. Brown*, 186 Ohio App.3d 437, 2010-Ohio-324, ¶ 7 (12th Dist.).  Specifically, R.C. 2941.25 states:

> (A)  Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 9}  The Ohio Supreme Court established a two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25 in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314.  Under the *Johnson* test, the first inquiry focuses on whether it is possible to commit the offenses with the same conduct.  *State v. Richardson*, 12th Dist. Clermont No. CA2012-06-043, 2013-Ohio-1953, ¶ 21, citing *Johnson* at ¶ 48.  In making this determination, it is not necessary that the commission of one offense would always result in the commission of the other.  *State v. Jackson*, 12th Dist. Clermont No. CA2013-04-037, 2013-Ohio-5371, ¶ 10.  Rather, the question is merely whether it is possible for the offenses to be committed with the same conduct.  *State v. Craycraft*, 193 Ohio App.3d 594, 2011-Ohio-413, ¶ 11 (12th Dist.); *State v. Marlow*, 12th Dist. Clermont No. CA2012-07-051, 2013-Ohio-778, ¶ 10.

{¶ 10} If it is possible to commit the offenses with the same conduct, the second inquiry under the *Johnson* test focuses on whether the offenses were in fact committed by

the same conduct; that is, by a single act, performed with a single state of mind. *State v. Estes*, 12th Dist. Preble No. CA2013-04-001, 2014-Ohio-767, ¶ 10. If so, the offenses are allied offenses of similar import and must be merged. *State v. Luong*, 12th Dist. Brown No. CA2011-06-110, 2012-Ohio-4520, ¶ 39. However, if the commission of one offense will never result in the commission of the other, "or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *State v. Standifer*, 12th Dist. Warren No. CA2011-07-071, 2012-Ohio-3132, ¶ 66, quoting *Johnson* at ¶ 51. The term "animus" is defined as "'purpose' or 'more properly, immediate motive.'" *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 13, quoting *State v. Logan*, 60 Ohio St.2d 126, 131 (1979).

{¶ 11} Kwambana argues the trial court erred by failing to merge his four kidnapping convictions because he "lacked any animus with respect to each separate victim; instead, he engaged in a single course of conduct." However, "Ohio courts have routinely recognized that separate convictions and sentences are permitted when the same course of conduct affects multiple victims." *State v. Clay*, 4th Dist. Lawrence No. 11CA23, 2013-Ohio-4649, ¶ 84; *see also State v. Young*, 8th Dist. Cuyahoga No. 99752, 2014-Ohio-1055, ¶ 27; *State v. Jackson*, 9th Dist. Summit No. 26757, 2013-Ohio-5557, ¶ 29; *State v. Lewis*, 11th Dist. Lake No. 2012-L-074, 2013-Ohio-3974, ¶ 136. In fact, as this court has stated previously, "where a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each offense." *State v. Lung*, 12th Dist. Brown No. CA2012-03-004, 2012-Ohio-5352, ¶ 16. In other words, "[c]ommitting the same crime, even simultaneously, with regard to different victims does not result in merger pursuant to R.C. 2941.25." *Id.* at ¶ 18, quoting *State v. Petefish*, 7th Dist. Mahoning No. 10 MA 78, 2012-Ohio-2723, ¶ 10. "Nothing in *Johnson* alters that conclusion." *Id.* at ¶ 16, quoting *State v. Young*, 2d Dist. Montgomery No. 23642, 2011-Ohio-747, ¶ 39.

**{¶ 12}** Despite this, Kwambana argues this court should overrule its decision in *Lung*, and, ostensibly, distance ourselves from those decisions in the Second, Fourth, Seventh, Eighth, Ninth and Eleventh Districts, as those decisions run "afoul of *Johnson*, by failing to look at a defendant's actual conduct and instead merely counting the number of victims named in an indictment." In support of this claim, Kwambana directs our attention to the First District Court of Appeals' decision in *State v. Anderson*, 1st Dist. Hamilton No. C-110029, 2012-Ohio-3347, a case in which the First District determined that appellant's convictions for aggravated robbery and kidnapping committed in the course of a bank robbery were subject to merger as it involved one sustained, continuous act.

**{¶ 13}** The issue in *Anderson*, however, was not whether the trial court erred by failing to merge multiple kidnapping convictions, but rather, whether the trial court erred by failing to merge appellant's convictions for single counts of aggravated robbery and kidnapping. The First District's decision in *Anderson*, therefore, is clearly distinguishable from the case at bar.[1] Moreover, we find any discussion regarding the so-called "bright-line rule for multiple-victim cases" in *Anderson* was purely dicta, unpersuasive, and otherwise inapplicable to the case at bar. *See generally State v. Fischer*, 2d Dist. Montgomery No. 25618, 2013-Ohio-4817, ¶ 12 (distinguishing *Anderson* and finding the offenses of aggravated robbery, felonious assault and kidnapping were not subject to merger as they "were each committed with a separate

---

1. We note, even if the issue of merger between aggravated robbery and kidnapping was properly before this court, we are not overly convinced by Kwambana's claim that "each of the kidnappings would have necessarily merged into" the aggravated robbery charge had that charge not been dismissed. *See State v. Chaffer*, 1st Dist. Hamilton No. C-090602, 2010-Ohio-4471, ¶ 15 (holding that defendant's movement of two bank employees from the parking lot to the inside of the bank, ordering them to lie on the floor, and then ordering them to stay in the bank vault significantly increased their risk of harm such that he had committed the kidnapping with a separate animus from the aggravated robbery); *State v. Champion*, 2nd Dist. Montgomery No. 17176, 1999 WL 114973 (Mar. 5, 1999) (holding that taping the victims' limbs and mouth and leaving them in a helpless condition exposed the victims to a substantially greater risk of harm than necessary for the accomplishment of the aggravated robbery); *State v. Perkins*, 93 Ohio App.3d 672, 684 (8th Dist.1994) (finding no merger of robbery and kidnapping convictions where appellant "completed the robbery once he obtained the combination to the safe" and then "subsequently restrained the victim's liberty by securing her hands together by binding her wrists in order to facilitate his escape"). That issue, however, is not before this court, thereby making any ruling on that matter improper and unnecessary.

animus involving two distinct victims"). In fact, as the First District explicitly noted in *Anderson,* "neither the state nor Anderson has raised or has had the opportunity to rebut the multiple-victim/multiple-crimes theory in this appeal." *Id.* at ¶ 39.

{¶ 14} The law of this district – and what we find to be the majority of courts throughout this state – is that a kidnapping that involves multiple kidnapping victims necessarily includes a finding of a separate animus for each kidnapping offense. *See Lung,* 2012-Ohio-5352 at ¶ 16 (finding no merger where "each kidnapping offense committed by appellant was perpetrated against a different victim"); *State v. Blackford*, 5th Dist. Perry No. 12 CA 3, 2012-Ohio-4956, ¶ 15 (holding each of appellant's four kidnapping offenses involved a different victim, and thus the offenses were not allied offenses of similar import); *State v. Smith*, 2d Dist. Montgomery No. 24402, 2012-Ohio-734, ¶ 25 ("[s]ince this conduct involves two separate victims, we conclude that the two [k]idnapping convictions do not constitute allied offenses of similar import"). We see no reason to deviate from these well-established principles based on the facts and circumstances presented here.

{¶ 15} Again, the undisputed facts in this case indicate Kwambana and Chipemba, his co-defendant, confronted each of the four victims at gunpoint before binding and hogtying them within the Golden Corral restaurant. As each kidnapping offense committed by Kwambana was perpetrated against a different victim, the four kidnapping charges do not constitute allied offenses of similar import subject to merger. Therefore, we decline Kwambana's invitation to overrule our decision in *Lung* and affirm the trial court's sentencing decision in its entirety. Accordingly, Kwambana's single assignment of error is overruled.

{¶ 16} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.