[Cite as *State v. Armbruster*, 2024-Ohio-2763.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-08-056 |
| | : | O P I N I O N |
| - vs - | | 7/22/2024 |
| | : | |
| MARVIN EARL ARMBRUSTER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM  CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2023-CR-00104

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

Gary A. Rosenhoffer and R. Scott Croswell, for appellant.

**PIPER, J.**

{¶1}   Marvin Earl Armbruster timely appeals his conviction and sentence in the Clermont County Court of Common Pleas for two counts of felonious assault, first-degree felonies, both offenses with attached firearm and peace-officer specifications. Armbruster's convictions were determined by a jury after three days of testimony. Upon

merging the firearm specifications into the peace-officer specifications, the trial court sentenced Armbruster to consecutive sentences.

## FACTUAL BACKGROUND

{¶2}    In April 2022, Armbruster lived in a house located at 1937 East Concord Road located at the corner of East Concord Road and Christine Drive. Christine Drive was a gravel road without streetlights; however, some residents had spotlights which detected motion.  Armbruster's residence had two bedrooms, a living room in the front of the house, and a kitchen in the back of the house with a large window that faced the backyard. The kitchen also had a door going out onto a patio in the backyard. Armbruster's grandson ("Grandson") lived with him at the residence at the time the incident occurred.

{¶3}    On April 24, 2022, at 2:53 a.m., Clermont County Sheriff Deputies Matt Halcomb and Seth Sparks were separately dispatched to East Concord Road and Christine Drive pursuant to 9-1-1 calls reporting gunfire. Each deputy stopped his cruiser on Christine Drive approximately 200 feet from East Concord Road. The vehicles' headlights remained on throughout the incident.

{¶4}    The deputies approached a man on a dirt-motorbike talking with a woman. The individuals informed the deputies where the gunshots were coming from.  As the deputies walked in the direction indicated, the deputies heard a male voice coming from Armbruster's backyard, shouting, "I'm going to fucking kill you."  The man, later identified as Armbruster, began firing at the deputies. The man was positioned in a shooter's stance, holding a handgun in two hands; he was approximately 25 feet away and aiming directly at the deputies.

{¶5}    When the firearm was fired the muzzle flashes allowed the deputies to observe that the man was wearing a short-sleeved, black T-shirt and blue jeans.  The

deputies immediately sought cover and Deputy Sparks identified himself and Deputy Holcomb as law enforcement officers. Deputy Sparks shouted for Armbruster to drop his weapon which had no effect. Instead, Armbruster began firing again and the deputies noticed that he was now using a shotgun. The deputies could hear the buckshot strike the trees around them. The blasts from the shotgun increased in volume as if the shooter was approaching closer to the position of the deputies. The deputies moved their position to behind a shed and eventually made their way into a yard abutting Armbruster's backyard. Upon observing a light illuminating inside Armbruster's kitchen the deputies saw him cradling a shotgun, pacing back and forth. Just as before, he was wearing a short-sleeved, black T-shirt and blue jeans.

{¶6} The Special Response Team eventually arrived and took control of the scene ordering all occupants to exit the residence. Armbruster, Grandson, and Grandson's friend, Kyle, exited the home. Deputies Halcomb and Sparks identified Armbruster as the individual who had been shooting at them.

{¶7} Armbruster denied any memory of what he may have done, but stated he was "in a world of shit." He indicated that he only remembered drinking mini bottles of Fireball Whisky, going to bed, and waking up to a bullhorn. Armbruster acknowledged that he kept a 12-gauge shotgun next to his bed, a .380 handgun under his pillow, and a 9 mm or .45 handgun in a nearby drawer.

{¶8} Spent handgun casings and expended shotgun shells were recovered from Armbruster's backyard. Among multiple weathered and discolored casings and shells, at least eight appeared freshly fired. They included three .45 mm casings, three .380 shell casings, and two 12-gauge shotgun shells. Their location indicated a pattern of advancing toward the location where the deputies had been. Ballistics analysis determined that the casings were fired from two handguns and the shells from a shotgun

found sitting near Armbruster's bedroom.

## PROCEDURAL POSTURE

{¶9}   On February 9, 2023, Armbruster was indicted by a Clermont County Grand Jury on two counts of attempted aggravated murder, two counts of attempted aggravated murder of peace officers, and two counts of felonious assault, all felonies of the first degree.  Each felonious assault offense was accompanied by two firearm specifications alleging that Armbruster (1) used a firearm while committing the offense, and (2) discharged a firearm at a peace officer while committing the offense.

{¶10}   The trial commenced on June 12, 2023, where the state presented testimony from Deputy Halcomb, Deputy Sparks, Armbruster's neighbors, two detectives (who interviewed Armbruster), a BCI forensic firearms expert, Grandson, and Kyle.  The deputies testified that Armbruster fired three rounds from a handgun and two or three rounds from a shotgun.  The videotape of Armbruster's interview was played to the jury and Armbruster's neighbors testified that the gunshots were coming from the direction of Armbruster's residence. Armbruster presented no witnesses in his defense.

{¶11}  The jury found Armbruster guilty of the two counts of felonious assault as well as the specifications attached to those offenses. Armbruster was found not guilty of the four counts of attempted aggravated murder.  The trial court merged the firearm specification attached to each felonious assault offense into the peace-officer specification.  Armbruster was sentenced to four years of incarceration for each of the felonious assault offenses and to seven years for each of the peace-officer specifications. The terms of incarceration were ordered to be served consecutively to one another.

{¶12}   Armbruster appeals raising four assignments of error which address: (1) whether the two felonious assault convictions had to be merged, (2) whether the sentences for the two firearm specifications were impermissibly run consecutive to one

- 4 -

another, (3) whether the evidence was insufficient or contrary to the manifest weight of the evidence, and (4) whether the verdict forms were fatally defective because the degree of the offense was not stated and the forms contained a typographical error. We address each individually.

**ANALYSIS**

{¶13} Assignment of Error No. 1:

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FAILED TO MERGE THE FELONIOUS ASSAULT CONVICTIONS AS REQUIRED BY R.C. 2945.25.

{¶14} An appellate court reviews de novo whether two offenses are allied offenses of similar import. *State v. Williams*, 2012-Ohio-5699, ¶ 28. We note that at sentencing Armbruster did not request the offenses be merged, nor did he object to the offenses not being merged. "An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *State v. Rogers*, 2015-Ohio-2459, ¶ 3. Thus, Armbruster must "demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, [he] cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*

{¶15} Pursuant to R.C. 2941.25, Ohio's allied-offenses statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Seymore*, 2022-Ohio-2180, ¶ 13 (12th Dist.). In determining whether offenses are allied, courts are instructed to consider three separate factors—the conduct, the animus, and the import. *State v. Ruff*, 2015-Ohio-995, paragraph one of the syllabus. Offenses do not merge,

and a defendant may be convicted and sentenced for multiple offenses if any of the following are true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus or motivation. *Id.* at ¶ 25. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶16} While the felonious assault offenses were identically charged in the indictment, the evidence at trial made clear that each offense involved a separate victim, Deputy Halcomb and Deputy Sparks. Because each offense targeted or attempted to offend a different individual, the two felonious assault offenses were of dissimilar import, and the trial court did not commit plain error by failing to merge the offenses. *State v. Kwambana*, 2014-Ohio-2582, ¶ 11 (12th Dist.). Armbruster cannot demonstrate he had a single animus to only cause one harm or that the offenses were not dissimilar due to separate victims. Armbruster's first assignment of error is overruled.

{¶17} Assignment of Error No. 2:

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT IMPOSED CONSECUTIVE SENTENCES ON THE FIREARM SPECIFICATIONS.

{¶18} We note the trial court did not impose a sentence for the firearm specifications and therefore his assignment of error as stated has no merit. However, we choose to address Armbruster's argument that the trial court erred when it ordered the peace-officer specifications be served consecutively to one another.

{¶19} Both felonious assault offenses were accompanied with a seven-year R.C. 2941.1412 peace-officer specification. The trial court imposed a seven-year prison term

for each of the R.C. 2941.1412 peace-officer specifications and ordered that those prison terms be served consecutively to one another and consecutively to the prison terms imposed on the felonious assault convictions.

{¶20} R.C. 2929.14(B)(1)(f) provides that when an offender is convicted of two or more felonies, such as the felonious assault offenses here, and is also convicted of a R.C. 2941.1412 peace-officer specification in connection with two or more of the felonies, the trial court, after imposing a prison term for each of the felony offenses, is required to impose a mandatory seven-year prison term for each of two of the peace-officer specifications. R.C. 2929.14(B)(1)(f)(i) and (iii).

{¶21} R.C. 2929.14(C)(1) governs the imposition of consecutive sentences for mandatory prison terms associated with various specifications. R.C. 2929.14(C)(1)(c) governs which other prison terms must be served consecutively to any prison term imposed for a peace-officer specification and provides:

> If a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(f) of this section, the offender shall serve the mandatory prison term so imposed consecutively to and prior to any prison term imposed for the underlying felony under division (A), (B)(2), or (B)(3) of this section or any other section of the Revised Code, and consecutively to any prison term or mandatory prison term previously or subsequently imposed upon the offender.

{¶22} The trial court was therefore required to impose a seven-year prison term for each of the R.C. 2941.1412 peace-officer specifications pursuant to R.C. 2929.14(B)(1)(f)(i) and (iii) and was further required to order that those prison terms be served consecutively pursuant to R.C. 2929.14(C)(1)(c). Therefore, the trial court correctly followed the law and did not err by ordering that the seven-year prison terms be served consecutively to one another and consecutively to the prison terms imposed on the felonious assault offenses. Being without merit, Armbruster's second assignment of

error is overruled.

**{¶23}** Assignment of Error No. 3:

ARMBRUSTER'S CONVICTIONS ARE NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶24}** Armbruster argues that his convictions for felonious assault and the peace-officer specifications are not supported by sufficient evidence and are against the manifest weight of the evidence because the state failed to prove that it was Armbruster who shot at the two deputies.

**{¶25}** When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Hibbard*, 2023-Ohio-983, ¶ 9 (12th Dist.). The relevant inquiry is whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Redden*, 2024-Ohio-1088, ¶ 8 (12th Dist.).

**{¶26}** To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Hibbard* at ¶ 10. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* "[A] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Davis*, 2011-Ohio-2207, ¶ 40 (12th Dist.).

{¶27} It is well settled that to warrant a conviction, the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime at issue. *Hibbard*, 2023-Ohio-983 at ¶ 20. There is no requirement that an accused must be identified in court or during a photo lineup. *Id.* The identity of the accused as the perpetrator of the crime may be established by direct or circumstantial evidence. *Id.* Circumstantial and direct evidence have the same probative value. *Id.*

{¶28} Upon reviewing the record, we find that Armbruster's convictions for felonious assault and the peace-officer specifications are supported by sufficient evidence and are not against the manifest weight of the evidence. In this case, the state presented ample evidence that Armbruster was the man who shot, several times, at Deputies Halcomb and Sparks.

{¶29} Armbruster's two next-door neighbors called 9-1-1 to report gunfire coming from the vicinity of Armbruster's residence. Deputies Halcomb and Sparks, the two peace officers who were subsequently shot at, both identified Armbruster's backyard as where a man yelled, "I'm going to fucking kill you!" Then the deputies were shot at, first three times with a handgun, then twice with a shotgun. Three .380 shell casings, three .45 shell casings, and two 12-gauge shotguns shells were recovered from Armbruster's backyard, the area where the shooter was standing. The casings and shells were recently fired, and ballistics analysis determined that they were fired from two handguns and a shotgun found in the vicinity of Armbruster's bedroom.

{¶30} The muzzle flashes from the firearm allowed Deputies Halcomb and Sparks to observe a description of the individual shooting at them. That description of clothing was identical to what Armbruster was wearing when he was apprehended. After Armbruster exited his residence, the deputies positively identified Armbruster as the man who had fired at them. Armbruster matched the deputies' description of the individual

firing at them and later seen in the kitchen holding a shotgun. When questioned by detectives, Armbruster claimed he had no memory of the events but asked if he had shot anyone.

**{¶31}** Although Armbruster asserts that some of the testimony and evidence presented at trial is "entitled to little or no credit or weight," it is well established that it is the trier of fact who makes determinations of credibility and the weight to be given to the evidence presented at trial. *State v. Martino*, 2018-Ohio-2882, ¶ 13 (12th Dist.). It is equally well established that a conviction is not against the manifest weight of the evidence merely because the trier of fact believed the testimony of the state's witnesses. *Id.* The jury is free to believe or disbelieve the testimony of any witness at trial. *State v. Keller*, 2019-Ohio-1397, ¶ 15 (12th Dist.).

**{¶32}** Considering the foregoing, we find that the evidence presented at trial does not weigh heavily in favor of acquittal and that the jury did not clearly lose its way and create a manifest miscarriage of justice in finding Armbruster guilty of felonious assault and the R.C. 2941.1412 peace-officer specifications. Armbruster's convictions for felonious assault and the peace-officer specifications are therefore supported by sufficient evidence and are not against the manifest weight of the evidence. Finding no merit to the third assignment of error, it is accordingly overruled.

**{¶33}** Assignment of Error No. 4:

> THE SIGNED JURY VERDICT FORMS AS ACCEPTED BY THE TRIAL COURT IN THIS CASE ARE FATALLY DEFECTIVE AND A FINDING OF GUILT MUST BE ENTERED ON THE LOWEST LEVEL OF OFFENSE.

**{¶34}** In his fourth assignment of error, Armbruster argues the verdict forms were fatally defective because the verdict forms contained a numerical, typographical error and did not state the degree of the felonious assault offense. There is no dispute that

- 10 -

Armbruster did not object to the verdict forms before, during, or after trial.

**I. Compliance with R.C. 2945.75**

**{¶35}** R.C. 2945.75(A)(2) provides the following regarding verdicts:

(A) When the presence of one or more additional elements makes an offense one of more serious degree:

. . .

(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

**{¶36}** "Pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted *or* a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *State v. McDonald*, 2013-Ohio-5042, ¶ 13. (Emphasis added). "The verdict form itself is the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." *Id.* at ¶ 17.

**{¶37}** As relevant here, felonious assault is typically a second-degree felony, however, it is enhanced to a first-degree felony if the subject aggrieved in the offense is a peace officer. R.C. 2903.11(D)(1)(a). Armbruster argues that R.C. 2945.75 is not satisfied in this case because there was a typographical error in the verdict forms that could not be cured by the trial court. He furthers his argument that R.C. 2945.75 was violated because there is no reference to the degree of the offense in the verdict forms. Armbruster suggests a failure to strictly comply in stating the degree of the offense requires reversal.

**A. Typographical error**

**{¶38}** As an initial matter, we agree there was a typographical error but disagree

- 11 -

with the argument that such an error cannot be cured. Here, the verdict forms stated that Armbruster was guilty of felonious assault "in violation of R.C. 29_2_3.11(A)(2)." The verdict forms should have stated that Armbruster was guilty of felonious assault in violation of R.C. 29_0_3.11(A)(2). (Emphasis added to distinguish the difference.)

**{¶39}** The error in the verdict forms was discovered after the jury executed the verdict forms supplied previously by the trial court. The trial court in its sentencing entry amended the verdict forms to reflect the typographical error. Courts considering identical issues have concluded that such clerical or typographical errors may be corrected by the court at any time, so long as the mistake is a "type of mistake or omission mechanical in nature, which is apparent on the record, and which does not involve a legal decision or judgment by an attorney." *State v. Carswell*, 2021-Ohio-3379, ¶ 26 (6th Dist.), citing Crim. R. 36; *State v. Cooper*, 2023-Ohio-2897, ¶ 35, fn. 2 (5th Dist.).

**{¶40}** Here, the trial court acted within its authority to correct the typographical error in the verdict forms which referred to the charge of felonious assault as being a violation of R.C. 2923.11(A)(2), instead of 2903.11(A)(2). *See Carswell* at ¶ 27. The typographical error referencing an incorrect numerical designation did not modify or otherwise impact Armbruster's convictions for felonious assault. *Id.* Correcting the clerical mistake was not a plain error.

### B. Degree of offense

**{¶41}** Armbruster's additional issue under this assignment of error attempts to find support in a trilogy of supreme court cases, yet he reduces his assignment of error to a very narrow argument. *State v. Pelfrey*, 2007-Ohio-256; *State v. Eafford*, 2012-Ohio-2224; *State v. McDonald*, 2013-Ohio-5042. Armbruster argues it is the degree of the offense that must be in the verdict forms. Armbruster does not argue there was an absence of an elevating factor. However, the statute clearly indicates an elevating factor

or aggravating element can be referenced in the verdict forms to raise a second-degree offense to a first-degree offense.

{¶42} On appeal, Armbruster argues that *Pelfrey* and *McDonald* established that R.C. 2945.75 requires "strict compliance" and the degree of the offense must specifically be mentioned. However, he does not address the entire holdings of those decisions. Armbruster only argues that the jury verdict forms do not reference the "degree of the offense as required by Pelfrey/McDonald." Admittedly, the cases Armbruster cites have caused confusion regarding what is required of R.C. 2945.75 and to what extent a plain-error analysis is applicable. *State v. Sanders*, 2019-Ohio-1524, ¶ 47 (8th Dist.); *State v. Shockey*, 2024-Ohio-296, ¶ 34 (3d Dist.).

{¶43} However, neither *Pelfrey* nor *McDonald* strictly require the degree of the offense be listed in the jury verdict form. Rather, both *Pelfrey* and *McDonald* clearly state that a verdict form satisfies R.C. 2945.75 if *either* the degree of the offense is listed, *or* the additional aggravating element is contained in the verdict forms. *Pelfrey* at ¶ 14; *McDonald* at ¶ 19.

{¶44} In this case, the jury verdict forms state:

> We, the Jury, find the Defendant, Marvin Earl Armbruster, GUILTY of felonious assault, in violation of R.C. 2923.11(A)(2) [sic], as charged in [Count Five and Count Six] of the indictment.

The same verdict forms also state:

> We, the Jury, further find that the Defendant, Marvin Earl Armbruster, DID *discharge a firearm at a peace officer while committing this offense*, as to the second firearm specification in [Count Five and Count Six].

(Emphasis added). While it is true that the verdict forms do not contain the degree of the offenses, the verdict forms sufficiently set forth the element that transforms each count of felonious assault from a second-degree felony to a first-degree felony. Namely, that

- 13 -

Armbruster discharged a firearm at a peace officer while committing the offense of felonious assault. Such is permissible under *Pelfrey*, *Eafford*, and *McDonald*. The verdict forms therefore comply with R.C. 2945.75(A)(2).

{¶45} Our dissenting colleague analyzes an issue under a misapprehension. In other words, Armbruster never suggested it wasn't peace officers who were the victims during the offenses. Although it generally goes without saying, it is well established that it is not this court's duty to "root out" arguments that can support an assignment of error, nor will this court "conjure up questions never squarely asked . . . ." *State v. Fields*, 2009-Ohio-6921, ¶ 7 (12th Dist.); App. R. 16(A)(7). Armbruster did not develop the issue and argument suggested by the dissent and this court will not construct such on Armbruster's behalf. *See Fields* at ¶ 7; *State v. Boatright*, 2017-Ohio-5794, ¶ 8 (9th Dist.). Thus, we decline to join the dissent's creation and analysis of an issue not raised.

{¶46} The dissent proposes that the specifications cannot be used to determine that peace officers were the victims of the felonious assaults. Notably, there is no authority in Ohio law that supports such a proposition. Instead, the dissent supports its proposition by suggesting a potential factual scenario relying on matters outside the four corners of the verdict forms. The speculative scenario relied upon is that the peace officer specification could attach to another offense involving a different victim other than the peace officers. However, we need not consider the world of factual possibilities that fall outside the four corners of the verdict form.

{¶47} As expressly contained in the four corners of the verdict forms, it is plain to read that the peace officers were the victims of the felonious assaults. The verdict forms say as much and they are the only relevant considerations in determining whether the dictates of R.C. 2945.75 were followed. *McDonald*, 2013-Ohio-5042 at ¶ 17, citing *Pelfrey*, 2007-Ohio-256 at ¶ 14.

**II. PLAIN ERROR**

**{¶48}** However, even if there was a de minimis or technical deficiency in complying with the statute, an analysis of plain error does not support reversal. As we noted above, the trilogy of *Pelfrey*, *Eafford*, and *McDonald* have caused some confusion because they involve decisions somewhat non-congruent with one another.

**{¶49}** Our dissenting colleague suggests that *Pelfrey* and *McDonald* require that strict compliance is the applicable standard and that a plain-error analysis is therefore inapplicable. There have been appellate districts that have stated that "strict compliance" is the required standard. *See State v. Thomas*, 2024-Ohio-1534, ¶ 113 (3d Dist.); *State v. Sims*, 2023-Ohio-4711, ¶ 16 (1st Dist.); *State v. Pierce*, 2017-Ohio-8578, ¶ 21 (8th Dist.). However, neither *Pelfrey* nor *McDonald* calls for reversal pursuant to a strict compliance standard—the standard or phrase "strict compliance" was not mentioned in those decisions. Furthermore, the statute itself makes no mention of a need for strict compliance and neither does any criminal rule applicable to R.C. 2945.75(A)(2).

**{¶50}** Some appellate districts appear to reason that if a statutory duty is mandatory, then a review for strict compliance is implicated. However, the supreme court even recently has determined that failing to perform an affirmative statutory duty can still be harmless. In *State v. Mills*, 2023-Ohio-4716, the failure to hold a mandatory competency hearing was a harmless error. *Id.* at ¶ 3. Strict compliance was not implicated.

**{¶51}** Similarly, in *State v. Perry*, 2004-Ohio-297, the supreme court considered whether automatic reversal was required because the trial court failed to comply with the mandatory duty in R.C. 2945.10(G) that required jury instructions to be filed along with other papers in the case. The court stated:

> The sole issue in this appeal is whether the failure of the trial

court to maintain written jury instructions with the "papers of the case" is cause for reversal regardless of whether such error affected the substantial rights of the defendant.

*Id.* at ¶ 6.

**{¶52}** In rejecting the notion of structural error and instead reversing for the appellate court to apply a plain-error analysis, Chief Justice Moyer cogently wrote:

> For to hold that an error is structural even when the defendant does not bring the error to the attention of the trial court would be to *encourage* defendants to remain silent at trial only later to raise the error on appeal where the conviction would be automatically reversed. We believe that our holdings should foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court—where, in many cases, such errors can be easily corrected.

*Id.* at ¶ 23. (Emphasis in original.) That same sound reasoning is applicable here. Furthermore, the court also emphasized that the defendant bears the burden of demonstrating that a plain error reversal was necessary only to prevent a manifest miscarriage of justice. *Id.* at ¶ 14.

**{¶53}** In this case, R.C. 2945.75(A)(2) was satisfied and Armbruster had unequivocal notice of the charges he was facing at trial. Armbruster had no objection to the trial court's instructions to the jury as to the evidence and definitions necessary to find him guilty of the first-degree felonies for attempting to shoot two peace officers. Armbruster knew the jury was charged with following those instructions (and the law presumes they did so). He had no objection to the trial court's announcement that he had been found guilty of attempting to shoot two peace officers. Neither before nor after sentencing did Armbruster object to the guilty findings for two first-degree felonious assaults.

**{¶54}** *Eafford* emphasized the standard for noticing plain error; the error must be a deviation from a legal rule, it must be an "obvious" defect in the proceedings, and the

error must have affected "substantial rights" that affected the outcome of the trial. *Eafford*, 2012-Ohio-2224 at ¶ 11. *Eafford* further emphasized Crim.R. 52(B) does not mean reversal is necessary. Plain error is to be used with the utmost caution, under exceptional circumstances and then only to prevent a manifest miscarriage of justice. *Id.* at ¶12.

**{¶55}** The reasoning offered in *Perry* by Chief Justice Moyer is both appropriate and applicable here. It would be disingenuous to assert an obvious error occurred, yet Armbruster invited the error by remaining silent. It would be similarly disingenuous to assert but for the error a different result would have occurred, and a miscarriage of justice would result unless Armbruster's convictions were vacated. The need for the utmost caution as emphasized in *Perry* and *Eafford* does not support the use of plain error to effectuate a reversal. Simply put, the trial court did not commit a plain error that requires reversal.

**{¶56}** It is unnecessary to evaluate the existence of plain error since the four corners of the verdict forms comply with R.C. 2945.75(A)(2). However, if the verdict forms were deficient, a plain-error analysis does not support reversal of Armbruster's first-degree felonious assault convictions. Thus, the fourth assignment of error is without merit and hereby overruled.

## CONCLUSION

**{¶57}** Having reviewed the record and the applicable law in consideration of Armbruster's assignments of error we overrule each and find no merit to the appeal.

**{¶58}** Judgment affirmed.

S. POWELL, P.J., concurs.

M. POWELL, J., concurs in part and dissents in part.

**M. POWELL, concurring in part and dissenting in part.**

- 17 -

{¶59} I concur in the majority opinion's resolution of the first three assignments of error and in the rejection of the clerical error aspect of the fourth assignment of error. However, because it cannot be determined from the four corners of the verdict forms that peace officers were the victims of the felonious assault offenses and plain-error analysis is inapplicable, the fourth assignment of error should be sustained.

{¶60} Armbruster was indicted on two counts of felonious assault for shooting at Deputies Halcomb and Sparks. Felonious assault is typically a second-degree felony. R.C. 2903.11(D)(1)(a). However, felonious assault is a first-degree felony if the victim of the offense is a peace officer. *Id.* The indictment alleged that the victims of the felonious assaults were peace officers; a R.C. 2941.1412 peace-officer specification was attached to both counts of felonious assault, alleging that Armbruster "discharged a firearm at a peace officer . . . while committing the offense."

{¶61} The jury found Armbruster guilty of both counts of felonious assault. The jury verdict forms provided that Armbruster was found guilty of felonious assault "as charged in" Counts Five and Six "of the indictment." Regarding the R.C. 2941.1412 peace-officer specifications, the verdict forms provided, "We, the jury, further find that [Armbruster] did discharge a firearm at a peace officer while committing this offense, as to the second firearm specification in Count Five [and Count Six]."

{¶62} R.C. 2945.75(A)(2) provides, "When the presence of one or more additional elements makes an offense one of more serious degree, [a] guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."

{¶63} The Ohio Supreme Court addressed the import of R.C. 2945.75(A)(2) in

*State v. Pelfrey*, 2007-Ohio-256, and *State v. McDonald*, 2013-Ohio-5042, and whether a failure to strictly comply with the statute is subject to a plain-error analysis.

{¶64} *Pelfrey* involved a third-degree felony tampering with records indictment. Although tampering with records is generally a misdemeanor, the records at issue were government records, which elevated the crime to a third-degree felony. *See* R.C. 2913.42(B). The verdict form did not set forth the degree of the offense or that the jury had found that the records involved were government records. Instead, the verdict form simply referred to the tampering with record offense "as charged in the indictment." The supreme court upheld the court of appeals' reversal of Pelfrey's third-degree felony conviction and its remand to the trial court to enter a judgment of conviction of first-degree misdemeanor tampering with records. The supreme court found Pelfrey's failure to object to the verdict form during the trial court proceedings of no consequence to its analysis and did not engage in a plain-error review.

{¶65} Finding that the statute "imposes no unreasonable burden on lawyers or trial judges," the supreme court held, "pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *Pelfrey*, 2007-Ohio-256 at ¶ 12, 14. The court further held, "The express requirement of the statute cannot be fulfilled by demonstrating additional circumstances, such as that the verdict incorporates the language of the indictment, or by presenting evidence to show the presence of the aggravated element at trial or the incorporation of the indictment into the verdict form, or by showing that the defendant failed to raise the issue of the inadequacy of the verdict form." *Id.* at ¶ 14.

{¶66} *McDonald* involved a third-degree felony failure to comply with the order or

signal of a police officer indictment. The offense is a first-degree misdemeanor unless the offender causes a substantial risk of serious physical harm to persons or property by operation of a motor vehicle, in which case the offense is elevated to a third-degree felony. *See* R.C. 2921.331(C). The verdict form, though including a finding that McDonald caused substantial risk of serious physical harm to persons or property, did not include a finding that the risk resulted from McDonald's operation of a motor vehicle. The verdict form also did not include the degree of the offense.

{¶67} The supreme court reversed McDonald's third-degree felony failure to comply conviction. Citing extensively to *Pelfrey*, the supreme court stated, "*Pelfrey* makes clear that in cases involving offenses for which the addition of an element or elements can elevate the offense to a more serious degree, the verdict form itself is the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." *McDonald*, 2013-Ohio-5042 at ¶ 17. In determining compliance with R.C. 2945.75(A)(2), the court held, "we look only to the verdict form signed by the jury to determine whether, pursuant to R.C. 2945.75, McDonald was properly convicted of third-degree felony." *Id.* at ¶ 18. The supreme court found that "a felony verdict form—if it does not state the degree of the offense—must state the elements that distinguish it from a misdemeanor offense," and that "the verdict form the jury signed does not set forth the additional elements that enhance the crime of failure to comply from a misdemeanor to a felony; it therefore supports only a misdemeanor conviction." *Id.* at ¶ 23-24. Neither the majority nor the dissent in *McDonald* referenced *State v. Eafford*, 2012-Ohio-2224.

{¶68} *Eafford* was decided after *Pelfrey* and before *McDonald*. It involved an indictment charging fifth-degree felony possession of cocaine in violation of R.C. 2925.11(A) and (C)(4). Drug possession charges may be misdemeanors or felonies depending upon the drug and quantity possessed; the least degree of possession of

cocaine is a fifth-degree felony. *See* R.C. 2925.11(C)(4). Eafford was convicted as charged and appealed. Applying *Pelfrey*, the court of appeals reversed Eafford's fifth-degree cocaine possession conviction and remanded for resentencing for misdemeanor possession because the jury verdict form did not state the degree of the offense or that the drug involved was cocaine. Rather, the verdict form simply stated that Eafford was found guilty of "possession of drugs in violation of R.C. 2925.11(A) . . . as charged in Count Two of the indictment." Observing that possession of drugs in violation of R.C. 2925.11(C)(2) and possession of cocaine in violation of R.C. 2925.11(C)(4) are separate offenses, the supreme court reversed the court of appeals' decision and reinstated Eafford's fifth-degree felony cocaine possession conviction. In doing so, the supreme court relied upon information beyond the four corners of the verdict form and, noting Eafford's failure to object to the verdict form, applied a plain-error analysis.

{¶69} The supreme court held that the verdict form's failure to include the degree of the offense or a finding that the drug involved was cocaine did not constitute plain error because (1) the indictment alleged that Eafford possessed cocaine, (2) expert testimony confirmed that the substance at issue was cocaine, (3) throughout the trial the parties and the trial court treated the phrase "possession of drugs" as synonymous with possession of cocaine, (4) the trial court instructed the jury that it could not find Eafford guilty of possession of drugs as charged in the indictment unless it found that the drug involved was cocaine, and (5) the verdict form referenced the indictment. *Eafford*, 2012-Ohio-2224 at ¶ 17. Despite the court of appeals' reliance upon *Pelfrey* in reversing Eafford's conviction, the *Eafford* majority did not address *Pelfrey* in its analysis.

{¶70} R.C. 2945.75(A) applies when an offense is elevated to a more serious degree due to the presence of additional enhancing elements. *Eafford* does not apply here because, unlike this case, *Pelfrey*, and *McDonald*, it did not involve an additional

enhancing element. As discussed, *Eafford* was indicted for possession of cocaine in violation of R.C. 2925.11(A) and (C)(4). The issue in *Eafford* was the absence of a finding in the verdict form of the degree of the offense or the identification of the substance as cocaine. Cocaine possession is an essential element of an offense under R.C. 2925.11(C)(4), not an additional enhancing element as described in R.C. 2945.75(A). In other words, possession of cocaine is a distinct offense and not an enhanced specie of possession of drugs. *Eafford* at ¶ 15. The supreme court did not resolve *Eafford* based on R.C. 2945.75(A):

> Although the [supreme] court discussed R.C. 2945.75(A)(2), its decision did not turn on that provision because it concluded that Eafford was charged with and convicted of "the least degree of [the] offense" of possession with cocaine, i.e., a fifth-degree felony, rather than an "elevat[ed] . . . degree of the offense." In other words, as decided by the court, *Eafford* did not involve the failure to include an enhancing element in the verdict form. As such, *Eafford* is distinguishable from *Pelfrey.*

*State v. Sanders*, 2019-Ohio-1524, ¶ 55 (8th Dist.). *See also State v. Barnette*, 2014-Ohio-5405, ¶ 37 (7th Dist.) ("Given the arguments and the issue as formulated by the Ohio Supreme Court, *Eafford* did not deal with the failure to include the enhancing element in the verdict form. Consequently, we are of the opinion that *Eafford*, at best, is confined to the facts of that case . . ."). Thus, the supreme court has implicitly recognized the absence of conflict in these cases as *Eafford*'s analysis ignores *Pelfrey* just as *McDonald*'s analysis ignores *Eafford*. *Pelfrey*, *Eafford*, and *McDonald* are not a trilogy in the sense that they are a series of three things relating to the same subject. On the contrary, *Pelfrey* and *McDonald* are a duology relating to the requirements of R.C. 2945.75(A) while *Eafford* deals with something altogether different.

{¶71} *Eafford* is inapplicable here. Unlike *Eafford*, the case at bar involves an aggravating element in that the victims of the felonious assault offenses were peace

officers, a circumstance that elevated the crime to a first-degree felony. The verdict forms did not identify whether Armbruster was convicted of first or second-degree felony felonious assault and did not set forth that the jury had found that the victims of the felonious assault were peace officers.

{¶72} The verdict forms do find Armbruster guilty of two R.C. 2941.1412 peace-officer specifications for discharging a firearm at a peace officer while committing the offense. The specification findings are included within the four corners of the verdict forms. However, based solely on the verdict forms, the specification convictions cannot be taken as a determination that peace officers were the victims of the felonious assaults.

{¶73} Consider a scenario where an offender discharges a firearm at an intervening peace officer while committing a felonious assault against a third party. In such a situation, the offender would be guilty of a R.C. 2941.1412 peace-officer specification; however, the peace officer would not be considered the victim of the felonious assault. This scenario would also support a felonious assault charge for the conduct against the peace officer along with a peace-officer specification. In this instance, unless the verdict forms specify the degree of the offense or the enhancing element that the victim of the felonious assault was a peace officer, it would not be possible to determine from the verdict forms alone the specific felonious assault offense of which the peace officer was a victim. The key point is that referring only to the verdict form containing a peace-officer specification finding does not clarify whether the victim of the felonious assault is a peace officer or a third party. Thus, the four corners of the verdict forms do not disclose that a peace officer was the victim of the felonious assaults committed by Armbruster. The only way to know this would require consideration of matters beyond the four corners of the verdict forms, contrary to *Pelfrey* and *McDonald*.

{¶74} Because this case involved an additional element enhancing the felonious

assault offenses from second-degree felonies to first-degree felonies, *Pelfrey* and *McDonald* are the controlling law and *Eafford* is inapplicable. Applying *Pelfrey* and *McDonald* to the jury verdict forms, I find they do not comply with R.C. 2945.75(A)(2) and only support convictions for second-degree felony felonious assault, not first-degree felony felonious assault, because they neither state the degree of the offense nor the aggravating element that the victims of the felonious assaults were peace officers. *See Barnette*, 2014-Ohio-5405. Moreover, objection to the verdict forms is not necessary to preserve the issue for review: "Because the language of R.C. 2945.75(A)(2) is clear, this court will not excuse the failure to comply with the statute or uphold [a] conviction based on additional circumstances[.] The express requirement of the statute cannot be fulfilled . . . by showing the defendant failed to raise the issue of the inadequacy of the verdict form." *Pelfrey*, 2007-Ohio-256 at ¶ 12-14; *McDonald*, 2013-Ohio-5042 at ¶ 17. Thus, plain-error analysis does not apply.

**{¶75}** Armbruster's fourth assignment of error should be sustained, his convictions for first-degree felony felonious assault vacated, and the matter remanded for the trial court to enter a judgment convicting Armbruster of two counts of felonious assault as second-degree felonies and for resentencing.

**{¶76}** With regard and respect for my colleagues in the majority, I dissent.