[Cite as *State v. Tolliver*, 2026-Ohio-1615.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

HOLLEY TOLLIVER, JR.,

    DEFENDANT-APPELLANT.

CASE NO. 8-25-10


OPINION AND
JUDGMENT ENTRY


Appeal from Logan County Common Pleas Court
Trial Court No. CR 24 09 0179

Judgment Affirmed

Date of Decision:  May 4, 2026


APPEARANCES:

    *William T. Cramer* for Appellant

    *Eric C. Stewart* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Holley Tolliver, Jr. ("Tolliver"), appeals the May 20, 2025 judgment entry of sentencing of the Logan County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On August 14, 2024, Tolliver engaged in a lengthy standoff with law enforcement. After approximately 11 hours of shooting at or into neighboring homes, ignoring loudspeaker announcements to surrender, and attempting to cause physical harm to law enforcement, Tolliver exited his residence with a gas mask hanging from his neck and gunshot wounds to his face and arm. Following his arrest, law enforcement found a cache of firearms and ammunition inside Tolliver's residence that were reported stolen from a neighbor's home the day before.

{¶3} On September 10, 2024, the Logan County Grand Jury indicted Tolliver on 39 counts as follows: one count of burglary in violation of R.C. 2911.12(A)(2), (D), a second-degree felony; one count of grand theft when the property is a firearm or dangerous ordnance in violation of R.C. 2913.02(A)(1), (B)(4), a third-degree felony; five counts of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), (C), all second-degree felonies, each count including a three-year firearm specification under R.C. 2941.145(A); 16 counts of felonious assault in violation of R.C. 2903.11(A)(2), (D)(1)(a), all first-degree felonies, each count including a seven-year firearm specification under R.C.

2941.1412(A); and 16 counts of attempted aggravated murder in violation of R.C. 2923.02, 2903.01(E)(1), 2929.02(A), all first-degree felonies, each count including a seven-year firearm specification under R.C. 2941.1412(A). On September 13, 2024, Tolliver appeared for arraignment and entered pleas of not guilty.

{¶4} On September 17, 2024, defense counsel filed a written plea of not guilty by reason of insanity ("NGRI") on Tolliver's behalf. That same day, the trial court ordered the Forensic Psychiatry Center for Western Ohio to conduct a competency evaluation and an NGRI evaluation.

{¶5} On October 9, 2024, Massimo De Marchis, Psy.D., met with Tolliver for one and a half hours to evaluate him. Tolliver was administered the Minnesota Multiphasic Personality Inventory-3 ("MMPI-3"). Dr. Marchis also reviewed court documents relating to Tolliver's pending charges, police reports, witness statements, a hospital memorandum dated August 16, 2024, Logan County Jail medical records, and Community Health and Wellness Partners medical records dated December 14, 2023.

{¶6} On October 25, 2024, Dr. Marchis issued two reports, one addressing Tolliver's competency to stand trial ("the competency report") and the other report addressing his mental condition at the time of the charged offenses ("the NGRI report"). In the competency report, Dr. Marchis opined that Tolliver "is a mentally ill individual, but not an intellectually disabled individual. He is currently capable

-3-

of understanding the court proceedings and assisting in his defense." (Oct. 29, 2024 Tr. at Exhibit 1). As for the NGRI report, Dr. Marchis stated that

> at the time of the offenses charged, the defendant neither was suffering from active signs/symptoms of a severe mental disease nor a severe mental defect. He further knew the wrongfulness of the acts charged.

(State's Exhibit 309).

{¶7} A competency hearing was held on October 29, 2024. At the hearing, the State and Tolliver's counsel stipulated to the admission of Dr. Marchis's competency and NGRI reports. When specifically questioned by the trial court if there was any other evidence that either the State or defense counsel wished to present, both parties declined to introduce any additional evidence. In particular, Tolliver's counsel stated, "No, Your Honor, not today." (Oct. 29, 2024 Tr. at 6). The trial court reviewed Dr. Marchis's reports and concluded that Tolliver was competent to stand trial. As to Tolliver's affirmative defense of NGRI, the trial court found that "at this point there's no evidence upon which an insanity defense could be based." (*Id.* at 7).

{¶8} On February 10, 2025, defense counsel requested that Tolliver be reevaluated to determine his competency to stand trial. The trial court granted the request and Tolliver was reevaluated by Dr. Marchis on February 19, 2025. Tolliver was administered the Structured Inventory of Malingered Symptomatology ("SIMS"). On February 24, 2025, Dr. Marchis issued a second competency report opining that Tolliver "is a mentally ill individual, but not an intellectually disabled

individual. He is currently capable of understanding the court proceedings and assisting in his defense." (Feb. 28, 2025 Tr. at Exhibit 1). Dr. Marchis further noted that Tolliver's "claimed memory impairments are assessed as spurious, because two psychological tests (MMPI-3 and SIMS) indicated that the defendant exaggerated or malingered memory impairments." (*Id.*)

{¶9} A second competency hearing was held on February 28, 2025 in the trial court. At the hearing, the parties stipulated to the admission of the second competency report prepared by Dr. Marchis. Based on the contents of the second competency report, the trial court found that Tolliver remains competent to stand trial.

{¶10} On April 11, 2025, the State moved to dismiss one count of improperly discharging a firearm at or into a habitation and all 16 counts of attempted aggravated murder and the accompanying firearm specifications. The trial court granted the State's motion and an amended indictment was filed charging 22 counts as follows: one count of burglary in violation of R.C. 2911.12(A)(2), (D), a second-degree felony; one count of grand theft when the property is a firearm or dangerous ordnance in violation of R.C. 2913.02(A)(1), (B)(4), a third-degree felony; four counts of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), (C), all second-degree felonies, each count including a three-year firearm specification under R.C. 2941.145(A); and 16 counts of felonious

assault in violation of R.C. 2903.11(A)(2), (D)(1)(a), all first-degree felonies, each count including a seven-year firearm specification under R.C. 2941.1412(A).

{¶11} The case proceeded to a four-day jury trial on April 14, 2025. On April 17, 2025, the jury returned guilty verdicts on all 22 counts and the accompanying firearm specifications.

{¶12} A sentencing hearing was held on May 19, 2025. The trial court sentenced Tolliver to an aggregate prison term of 125 to 130.5 years as follows: eight years for one count of burglary; three years for one count of grand theft when the property is a firearm or dangerous ordnance; eight years for each of the four counts of improperly discharging a firearm at or into a habitation and three years for each of the accompanying firearm specifications; 11 to 16.5 years for one count of felonious assault and seven years for the accompanying firearm specification; and three years for each of the remaining 15 counts of felonious assault and seven years for each of the accompanying firearm specifications.[1] The trial court ordered that all sentences be served consecutively, with the exception that 14 of the 16 seven-year firearm specifications be served concurrently.

{¶13} On May 21, 2025, Tolliver filed a notice of appeal. He raises four assignments of error for our review.

---

[1] The trial court filed its judgment entry of sentencing on May 20, 2025.

## First Assignment of Error

**The trial court violated appellant's rights to due process and a fair trial under the Fifth and Fourteenth Amendments to the U.S. Constitution, and Sections 10 and 16, Article I of the Ohio Constitution, by refusing a jury instructions on insanity.**

{¶14} In his first assignment of error, Tolliver argues that the trial court erred by refusing to instruct the jury on the affirmative defense of NGRI. According to Tolliver, "the evidence was sufficient to raise a question in the minds of reasonable people as to whether [his] delusions prevented him from understanding the wrongfulness of his actions." (Appellant's Brief at 19). Tolliver contends that "[t]he NGRI issue should have been left to the jury." (*Id.*).

*Standard of Review*

{¶15} "[T]he trial judge is in the best position to gauge the evidence before the jury and is provided the discretion to determine whether the evidence adduced at trial was sufficient to require an instruction." *State v. Fulmer*, 2008-Ohio-936, ¶ 72. We review a trial court's refusal to give a requested jury instruction for an abuse of discretion. *State v. Houle*, 2023-Ohio-4609, ¶ 18 (3d Dist.). An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶16} "A person is not guilty by reason of insanity only if the person proves that 'at the time of the commission of the offense, the person did not know, as a

result of a severe mental disease or defect, the wrongfulness of the person's acts.'"

*State v. Grate,* 2020-Ohio-5584, ¶ 76, quoting R.C. 2901.01(A)(14). Because NGRI

is an affirmative defense that a defendant must prove by a preponderance of the

evidence,

> [t]he proper standard for determining whether a defendant has successfully demonstrated this defense and thus is entitled to an NGRI instruction is whether he has introduced sufficient evidence, which if believed, would raise a question in the mind of a reasonable person concerning the existence of the issue.

*Grate* at ¶ 76, citing *State v. Monford,* 2010-Ohio-4732, ¶ 70 (10th Dist.). "A trial

court does not err in refusing to include an instruction to the jury on the defense of

insanity where the evidence presented does not warrant such an instruction."

*Monford* at ¶ 70.

{¶17} In this case, the trial court determined that Tolliver was not entitled to

an NGRI instruction because the evidence presented at trial did not support the

affirmative defense of insanity. Specifically, the trial court found that Tolliver

failed to introduce sufficient evidence to show that, at the time of the commission

of the offenses, he did not know, as a result of a severe mental disease or defect, the

wrongfulness of his acts. Significantly, the trial court noted that Tolliver failed to

produce expert testimony to support his insanity defense.

{¶18} After reviewing the record, we agree with the trial court that Tolliver

did not present sufficient evidence to support an NGRI instruction. First, Dr.

Marchis testified during the State's case-in-chief that, at the time of the offenses,

Tolliver neither was suffering from active signs/symptoms of a severe mental disease nor a severe mental defect such that he did not know the wrongfulness of his acts. *See Monford* at ¶ 76 (concluding that the defendant was not denied his right to due process or a fair trial when the evidence did not support an NGRI defense such that an NGRI instruction would not have been warranted). Second, Tolliver's own trial testimony did not tend to support an NGRI instruction. *See State v. Hess,* 2014-Ohio-3193, ¶ 28 (4th Dist.) (stating that an "NGRI defense is wholly inconsistent with the theory that was presented at trial, i.e. that Hess did not engage in any wrongful conduct").

{¶19} Tolliver testified in his own defense at trial. On direct examination, Tolliver denied breaking into his neighbor's home and stealing guns and other items of personal property. When asked how the stolen items got into his own home, Tolliver replied, "I have no idea[.]" (Apr. 16, 2025 Tr. at 191). Tolliver further denied firing shots at another neighbor's home on the morning of the standoff. He also denied trying to harm law enforcement and stated that he did not hear the loudspeaker announcements to surrender.

{¶20} Tolliver testified that he has "memory issues" regarding what transpired that day. (*Id.*). "I just remember waking up and taking sleeping pills. I have two sleeping pills I take, and going back to sleep." (*Id.* at 192). Tolliver further testified that, at some point, "I heard a window bust and something fell on the floor." (*Id.* at 195). Tolliver stated that he fired "[a] 12-gauge shotgun into the - - straight

-9-

down, at a 45-degree angle" and then went back to sleep. (*Id.* at 196). "Next thing I remember is the wall, the south wall, getting ripped out, and them shooting at me, my arm and my nose." (*Id.* at 196-197). At this point, Tolliver realized law enforcement was outside "and I came out." (*Id.* at 198). When he exited his residence, Tolliver had a gas mask hanging from his neck and gunshot wounds to his face and arm. Tolliver testified that he did not remember putting the gas mask on.

{¶21} Following his arrest, Tolliver was taken to the hospital. Tolliver testified, "I was told that I was being treated for schizophrenia at Miami Hospital when I was there." (Apr. 16, 2025 Tr. at 199). Tolliver further testified that he is currently taking medication to assist with the "visions or hallucinations" and hearing things. (*Id.*). When asked about specific hallucinations, Tolliver replied, "Mainly just, like, people coming out of the floor in the home - - or wherever I'm at, at the jailhouse structure - - the jail[.]" (*Id.* at 200). When asked if he believed his mental health negatively impacted his ability to understand what was going on that day, Tolliver stated,

> I really couldn't say, to be honest with you. I mean, I would think it would. Just by the decision to go back in there and lay down, I'd say it probably had something to do with my mental health, but that's all I could think about doing, was laying back down and just going back to sleep.

(*Id.* at 202-203).

{¶22} On cross-examination, Tolliver reiterated that he did not hear the loudspeaker announcements to surrender. Tolliver admitted that, following his arrest, he told law enforcement that he felt he was under attack. When asked if he ever tried yelling out the window, Tolliver answered, "I tried communicating once or twice, but some - - but the equipment was running, so I guess they couldn't hear me." (*Id.* at 214). Tolliver testified that he was in the middle of his home when he yelled out. When asked what he attempted to communicate, Tolliver replied, "Just by asking, what do you want? And that kind of conversation, plus a few bad words." (*Id.*). Tolliver's trial testimony concluded with the State questioning him as follows:

> Q. Okay. I guess - - I guess my confusion is this. You don't - - there's a lot of things you don't remember, but you do remember taking a sleeping pill that morning, correct?
>
> A. Yeah.
>
> Q. You have a pretty vivid memory of that?
>
> A. Yeah, that's when I first woke up.
>
> Q. And everything else though, shooting at the officers, how the guns got in your house, burglarizing [the neighbor's home], you don't remember any of that?
>
> A. No sir. I do not.
>
> Q. Okay, that's what you want the jury to believe, is you just don't remember any of this?
>
> A. Well, I - - well, I don't remember it - - I don't - - I'm not asking them to believe that. I just don't remember.

(*Id.* at 219-220). Following this line of questioning, there was no redirect examination and the defense rested.

**{¶23}** Additionally, Dr. Marchis testified at trial that his clinical interview of Tolliver "revealed some features of a delusional disorder." (Apr. 16, 2025 Tr. at 99). In particular, Tolliver believed that his computer had been hacked by unknown entities that prevented him from working. Dr. Marchis testified that Tolliver's "persecutory paranoid delusions . . . were fairly circumscribed to that specific topic." (*Id.*). Dr. Marchis further testified that the results of the psychological testing revealed a personality disorder, such as schizoid personality disorder. Dr. Marchis explained that

> even if someone has a certifiable mental illness, it does not mean that they are experiencing symptoms of such mental illness 24-7. In other words, just because you have a mental disorder, it doesn't mean that you're mentally ill every single minute of your life.

(*Id.* at 105-106).

**{¶24}** As to his opinion regarding Tolliver's mental condition at the time of the charged offenses, Dr. Marchis testified that Tolliver "did not manifest symptoms of a severe mental disease or defect." (*Id.* at 101). With respect to his opinion regarding whether Tolliver understood the wrongfulness of his acts at the time of the charged offenses, Dr. Marchis testified that Tolliver's actions "seemed to be planned, purposeful, and goal-directed." (*Id.* at 103). As to Tolliver's claim of memory loss, Dr. Marchis testified that "[c]laiming to have no memory of engaging

in such actions is a spurious claim designed to deny responsibility, which again, is another indication of knowledge of the wrongfulness of someone's action." (*Id.* at 104).

{¶25} Based on the foregoing, we conclude that the trial court did not abuse its discretion by refusing to instruct the jury on the affirmative defense of NGRI. The trial court considered all of the evidence presented at trial and determined that it was not sufficient to support an instruction on the defense of NGRI. *See Fulmer*, 2008-Ohio-936, at ¶ 72. Therefore, we conclude that the trial court did not err by refusing to instruct the jury on the affirmative defense of NGRI.

{¶26} Tolliver's first assignment of error is overruled.

### Second Assignment of Error

**The trial court erred by imposing consecutive sentences because, by clear and convincing evidence, the record does not support the findings required by R.C. 2929.14(C)(4).**

{¶27} In his second assignment of error, Tolliver argues that the trial court erred by imposing consecutive sentences in this matter.

*Standard of Review*

{¶28} Under R.C. 2953.08(G)(2), an appellate court may vacate or modify a felony sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. When reviewing the imposition of consecutive sentences, "[t]he plain language of

R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-Ohio-3851, ¶ 5. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

{¶29} "Except as provided in . . . division (C) of section 2929.14, . . . a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A).  In pertinent part, R.C. 2929.14(C) provides:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶30} Thus, when imposing consecutive sentences, R.C. 2929.14(C)(4) requires the trial court to make specific findings on the record. *State v. Hites*, 2012-Ohio-1892, ¶ 11 (3d Dist.). "Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies." *State v. Runyon*, 2024-Ohio-5039, ¶ 23 (3d Dist.). Further, the trial court must state the required findings at the sentencing hearing and incorporate those findings into its sentencing entry. *Id.* at ¶ 24. The trial court "has no obligation to state reasons to support its findings" and is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *State v. Bonnell*, 2014-Ohio-3177, ¶ 37.

{¶31} In this case, the trial court imposed consecutive sentences on all 22 counts. The trial court also imposed consecutive sentences as to all four of the three-

year firearm specifications and two of the 16 seven-year firearm specifications.[2] Additionally, the trial court made the required consecutive-sentence findings at Tolliver's sentencing hearing. In particular, the trial court found that (1) "consecutive sentences are necessary to protect the public from future crime and to punish [Tolliver]"; (2) "consecutive sentences are not disproportionate to the seriousness of [Tolliver's] conduct and to the danger [Tolliver] poses to the public"; and (3)

> at least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of [Tolliver's] conduct.

(May 19, 2025 Tr. at 16). *See* R.C. 2929.14(C)(4)(b). Moreover, the trial court incorporated these findings into its sentencing entry.

{¶32} Nonetheless, Tolliver argues that the record does not support the trial court's findings that consecutive sentences are necessary to protect the public from future crime and to punish him, and that consecutive sentence are not disproportionate to the seriousness of his conduct. In support of his argument, Tolliver claims that he does not pose a danger to the public because, prior to the instant offenses, "[he] had no criminal record and his ORAS score was low." (Appellant's Brief at 21). Tolliver further argues that, at the time of the instant

---

[2] The trial court ordered that the remaining 14 seven-year firearm specifications be served concurrently.

offenses, "[he] suffered from severe mental health issues that were not previously diagnosed or properly treated" and "was faced with a number of issues in his personal life—such as the break-up of his marriage and financial difficulties." (*Id.* at 21-22). Now that he has been properly diagnosed and treated with medication, Tolliver contends that a release from prison in approximately 20 years—when he would be nearly 80 years old—would not pose a danger to the public. As to the seriousness of his conduct, Tolliver asserts that a minimum sentence of 125 years is too harsh since the harm he caused "was confined to property damage." (*Id.* at 22).

{¶33} "While a trial court is not required to state reasons in support of its R.C. 2929.14(C)(4) findings, an appellate court may take action if the record clearly and convincingly does not support the trial court's findings under R.C. 2929.14(C)(4)." *State v. Mason*, 2020-Ohio-3505, ¶ 13 (3d Dist.). *See also Gwynne*, 2023-Ohio-3851, at ¶ 5. Thus, "'our consecutive-sentencing review is limited to determining whether the record supports the findings actually made; it is not an invitation to determine or criticize how well the record supports the findings.'" *State v. Nienberg*, 2017-Ohio-2920, ¶ 19 (3d Dist.), quoting *State v. Jones*, 2016-Ohio-8145, ¶ 16 (8th Dist.).

{¶34} Here, the record supports the trial court's findings that consecutive sentences are necessary to protect the public from future crime and to punish Tolliver, and that consecutive sentences are not disproportionate to the seriousness of Tolliver's conduct and to the danger the he poses to the public. Specifically, the

record shows that Tolliver stole an arsenal of firearms and ammunition from a neighboring residence; dug fox holes inside his home and strategically placed the stolen firearms throughout the home; engaged in a "shooting up of the neighborhood" that endangered the lives of neighbors; attempted to cause physical harm to law enforcement; and ignored repeated attempts made by law enforcement for a peaceful resolution. (May 19, 2025 Tr. at 10). The trial court found that the victims—being Tolliver's neighbors and 16 peace officers—suffered significant emotional harm as a result of Tolliver's actions. The trial court further found that "[s]hooting up of the neighborhood is a factor that makes these offenses more serious than normal offenses of the type." (*Id.* at 11).

{¶35} Accordingly, after reviewing the record, we conclude that the trial court's consecutive-sentence findings are supported by the record and we reject Tolliver's argument to the contrary. We further conclude that the record reflects that the trial court made the required R.C. 2929.14(C)(4) findings before imposing consecutive sentences and incorporated those findings into its sentencing entry and that those findings are not clearly and convincingly unsupported by the record. *Nienberg*, 2017-Ohio-2920, at ¶ 22-23 (3d Dist.).

{¶36} Tolliver's second assignment of error is overruled.

### Third Assignment of Error

**The trial court erred by imposing all four of the three-year firearm specifications for improper discharge when all of the offenses were committed as part of the same act or transaction.**

**{¶37}** In his third assignment of error, Tolliver argues that the trial court erred by imposing all four of the three-year firearm specifications in contravention of R.C. 2929.14(B)(1)(b), which prohibits courts from imposing multiple prison terms for felonies committed as part of the same act or transaction.

*Standard of Review*

**{¶38}** As previously stated, under R.C. 2953.08(G)(2), an appellate court may vacate or modify a felony sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Marcum*, 2016-Ohio-1002, at ¶ 1.

*Analysis*

**{¶39}** In this case, Tolliver was convicted of four counts of improperly discharging a firearm at or into a habitation and each conviction included a three-year firearm specification under R.C. 2941.145(A). Pursuant to R.C. 2929.14(B)(1)(b), "a court shall not impose more than one [firearm specification] prison term on an offender . . . *for felonies committed as part of the same act or transaction.*" (Emphasis added.) The Ohio Supreme Court has defined "transaction" as "'a series of continuous acts bound together by time, space and purpose, and directed toward a single objective.'" *State v. Wills,* 69 Ohio St.3d 690,

691 (1994), quoting *State v. Caldwell,* 1991 Ohio App. LEXIS 5879, **\*32** (9th Dist. Dec. 4, 1991).

{¶40} On appeal, Tolliver argues that the trial court erred by imposing all four of the three-year firearm specifications since his "acts of firing into neighboring houses were part of a single criminal misadventure." (Appellant's Brief at 23). In support of his argument, Tolliver contends that the offenses "occurred relatively close in time with a similar objective of repelling the people who were invading his house." (*Id.*).

{¶41} Here, the record shows that Tolliver discharged multiple firearms at or into four separate homes at different times throughout the day. On the morning of the standoff, Tolliver discharged a firearm at or into the home of G.T. at 11307 Big Bear Path sometime between 9:30 and 10:30 a.m. G.T. testified that he was watching television and "heard a big bang." (Apr. 14, 2025 Tr. at 161). He did not think much of the noise until it happened again and he saw "powder or smoke in the kitchen." (*Id.*). He went into the kitchen and saw "a hole in the wall . . . drywall on my table, and well, somebody shot my house." (*Id.*). G.T. called 911 to report the shooting. Law enforcement arrived shortly thereafter. A forensic firearms expert testified at trial that the bullet recovered from G.T.'s home was "larger than a .22 caliber bullet" and "most consistent with a rifle bullet." (Apr. 16, 2025 Tr. at 61).

{¶42} Later that same day, after law enforcement made repeated attempts for a peaceful resolution, Tolliver discharged a firearm at or into the home of K.B. at

11330 Big Bear Path. K.B. testified that "[a] bullet came through the house, ricocheted off the refrigerator, hit the window." (Apr. 15, 2025, Tr. at 183). K.B. further testified that bullets hit the siding of her home, the garage and garage door, and the windshield of her vehicle. A forensic firearms expert testified that the "jacket fragment" of a bullet recovered from K.B.'s home "was consistent with being .30 caliber." (Apr. 16, 2025 Tr. at 63).

{¶43} Additionally, Tolliver discharged a firearm at or into the home of E.O. at 11322 Tecumseh Path. E.O. testified that bullets hit his home, a brand-new vehicle in his driveway, the garage and its contents, and a metal shed on his property. E.O. further testified that one bullet hit the water softener inside his home. A forensic firearms expert testified that four bullets recovered from E.O.'s property "were completely intact" and determined the "specific caliber" as being ".45 auto." (Apr. 16, 2025 Tr. at 65).

{¶44} Lastly, Tolliver discharged a firearm at or into the home of J.V. at 11286 Big Bear Path. An unknown caliber bullet hit J.V.'s home and went through to the kitchen.

{¶45} Based on our review of the record, we conclude that the trial court did not err by imposing all four of the three-year firearm specifications in this case. Critically, the conduct underlying each of the four counts of improperly discharging a firearm at or into a habitation was not committed as part of the same act or transaction. Indeed, these shootings took place at different times throughout the day

and involved four separate homes—11307 Big Bear Path, 11286 Big Bear Path, 11330 Big Bear Path, and 11322 Tecumseh Path—indicating a break in the continuity of the criminal behavior. Moreover, Tolliver discharged at least three different firearms at or into neighboring homes and caused distinct damage to each of the four homes. *See State v. Harris*, 2020-Ohio-673, ¶ 11 (8th Dist.) (concluding that "[a]lthough the crimes occurred on the same day, they were committed at separate locations and involved separate victims" and thus "separate criminal acts"). Consequently, Tolliver's sentence is not contrary to law.

{¶46} Tolliver's third assignment of error is overruled.

### Fourth Assignment of Error

**The trial court erred by imposing the seven-year firearm specifications concurrently when the court clearly meant to exercise its discretion to not impose them under R.C. 2929.14(B)(1)(f).**

{¶47} In his fourth assignment of error, Tolliver argues that the trial court erred by imposing all 16 of the seven-year firearm specifications. According to Tolliver, "the trial court only intended to impose two seven-year [firearm] specifications, but erroneously believed that they all had to be imposed." (Appellant's Brief at 24).

*Standard of Review*

{¶48} Again, under R.C. 2953.08(G)(2), an appellate court may vacate or modify a felony sentence "only if it determines by clear and convincing evidence

that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Marcum*, 2016-Ohio-1002, at ¶ 1.

*Analysis*

{¶49} In this case, Tolliver was convicted of 16 counts of felonious assault and each conviction included a seven-year firearm specification under R.C. 2941.1412(A). The trial court imposed the seven-year firearm specifications as follows:

> On Counts Seven through 22, the seven-year firearm specifications, mandatory seven-year terms on Counts Seven and Eight to be served consecutively, and mandatory seven years on Counts Nine through 22 to be served concurrently with Counts Seven and Eight for a total of 14 years. So that's seven years on Count Seven, seven years on Count Eight, consecutive to Count Seven for 14 years; seven years on Counts Nine through 22 to be served concurrently with Count Seven and Eight for a total of 14 years on the seven-year firearm specifications.

(May 19, 2025 Tr. at 12).

{¶50} In his fourth assignment of error, Tolliver does not argue that the trial court erred by imposing two seven-year firearm specifications consecutively. Rather, he argues that the trial court erred by imposing the remaining 14 seven-year firearm specifications concurrently. This argument lacks merit.

{¶51} The imposition of the seven-year firearm specification under R.C. 2941.1412(A) is governed by R.C. 2929.14(B)(1)(f). Specifically, R.C. 2929.14(B)(1)(f)(iii) states, in pertinent part:

> If an offender is convicted of or pleads guilty to two or more felonies that include, as an essential element, causing or attempting to cause

the death or physical harm to another and also is convicted of or pleads guilty to a specification of the type described under division (B)(1)(f) of this section in connection with two or more of the felonies of which the offender is convicted or to which the offender pleads guilty, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(f) of this section *for each of two of the specifications* of which the offender is convicted or to which the offender pleads guilty *and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications. . . .*

(Emphasis added). Thus, "[b]y its plain language, the trial court 'shall' impose on the offender the seven-year term 'for each of two of the specifications'" and, *in its discretion,* may impose the seven-year term 'for any or all of the remaining specifications.'" (Emphasis in original). *State v. Wilson*, 2023-Ohio-1042, ¶ 59 (8th Dist.), quoting R.C. 2929.14(B)(1)(f)(iii).

**{¶52}** Based on our review of the record, we conclude that the trial court was required to impose two of the 16 seven-year firearm specifications that accompanied his felonious-assault convictions. *See State v. Armbruster,* 2024-Ohio-2763, ¶ 20 (12th Dist.) (determining that when an offender is convicted of two or more felonies, such as felonious assault, the trial court "is required to impose a mandatory seven-year prison term for each of two of the [R.C. 2941.1412] peace-officer specifications"). We further conclude that the trial court acted within its discretion by imposing the remaining 14 seven-year firearm specifications concurrently. *See Wilson* at ¶ 59 (concluding that the trial court acted within its discretion when it

imposed a third seven-year firearm specification and ordered it to run concurrently). Accordingly, Tolliver's sentence is not contrary to law.

{¶53} Tolliver's fourth assignment of error is overruled.

{¶54} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**MILLER and WALDICK, J.J., concur.**

Case No. 8-25-10

# **<u>JUDGMENT ENTRY</u>**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

William R. Zimmerman, Judge

Mark C. Miller, Judge

Juergen A. Waldick, Judge

DATED:
/hls

-26-